[Civ. No. 229. Fourth Appellate District.—November 22, 1930.]

WALLACE B. DENNIS et al., Respondents, v. CITY OF ORANGE (a Municipal Corporation), Appellant.

Harry L. Dearing, City Attorney, L. A. West and Reeves Aylmore for Appellant.

McFadden, Holden & Friis for Respondents.

BARNARD, J.—This is an action to recover damages for the washing away of a part of plaintiffs' land by flood waters flowing down Santiago Creek, near the City of Orange. The defendant city owns certain land lying in the bed of this creek, together with certain land along the west bank thereof. This bank is about twelve feet higher than the normal bed of the creek. The plaintiffs' land adjoins this land owned by the city and prior to April, 1926, was entirely separated from the creek by a narrow strip of the city's land, although at one end it came very near the bank of the creek. Prior to February, 1927, two rows of twenty-six year old eucalyptus trees, seventy-five feet tall, stood along the bank of the creek, mostly upon the strip of land owned by the city, a few being upon the plaintiffs' land where it approached nearest to the bank of the creek. The bank of the creek with these trees upon it had thus stood uninjured for many years prior to April, 1926. On August 16, 1924, the City of Orange leased its above-described land to one George A. Simpson, for the purpose of excavating sand, rock and gravel from the bed of the creek thereon. This lease provided that no excavating should be done within thirty feet of the west bank of Santiago Creek. No excavating was done by Simpson upon the property and on August 4, 1925, with the consent of the City of Orange, he assigned this lease to Kavanagh & Twohy. The new lessees began operations immediately and continued the same until February, 1927, during which time they excavated and removed large quantities of sand, rock and gravel for commercial purposes, thereby creating large channels and pits on the property leased and, in addition, excavated channels to permit the escape of water. The evidence shows that during and following severe storms and heavy rainfalls, flood waters flow in Santiago Creek with great rapidity, and in the neighborhood of the land here in question, during such flood conditions, the current of water in the creek swishes from side to side of the stream bed, striking first one bank and then the other, and that unprotected land is undermined and eaten out by the water when a deflection of the current is caused by any obstruction or unusual circumstance. Such a flood occurred in April, 1926, when a

small portion of the narrow strip of bank owned by the City of Orange, at a point where the plaintiffs' land came nearest to the creek-bed, was washed away, thus directly exposing a small part of plaintiffs' land to the creek. On September 21, 1926, the City of Orange brought a suit against Kavanagh & Twohy for the cancellation of their lease, alleging in their complaint that those defendants had excavated closer than thirty feet to the west bank of Santiago Creek, contrary to the terms of the lease, and further alleging as follows: "That said defendants have committed waste on said premises by diverting the natural channel of said Santiago Creek and causing the same to flow with increased force against the westerly bank of said creek, causing an erosion of said bank to such an extent that large quantities of soil valuable for agricultural purposes have fallen into said creek and have been washed away, and a large number of full-grown eucalyptus trees growing upon said bank to be undermined by said waters and causing them to fall into said creek and be entirely destroyed." Thereafter this suit was settled, the old lease was canceled by mutual agreement, a new lease was entered into between the city and Kavanagh & Twohy, and the lessees continued with their excavating operations. Thereafter, in February, 1927, a heavy rainfall, lasting several days, but which, according to appellant, fell in a usual manner, caused a flood in Santiago Creek, during which a portion of the plaintiffs' land with approximately 125 sixteen year old full-bearing orange trees was washed away, and considerable other damage done to plaintiffs' property.

To recover for this damage this action was brought against the City of Orange and Kavanagh & Twohy, the complaint, among other things, alleging that Kavanagh & Twohy had carelessly and negligently excavated and dredged a channel along the foot of the west bank of Santiago Creek, nearer than thirty feet to the bank, and along a portion of the plaintiffs' premises; that they had lowered the natural channel of the creek and diverted the waters thereof from their previous location and level; that this dredging caused the waters in the creek to flow with increased force and depth against the west bank thereof; that such diversion of the water in the creek had caused certain eucalyptus trees to fall into the creek, and was of such a nature as to cause

further erosion of the west bank of said creek; that the City of Orange, with knowledge of all of this and of the nuisance thereby created, had canceled the lease under which Kavanagh & Twohy were operating and entered into a new lease with the same tenant; that before said new lease was delivered, the City of Orange neglected and refused to abate the nuisance, and failed to restore the channel to its previous condition or to otherwise protect plaintiffs' premises from the waters of Santiago Creek; and that by reason of the acts done by Kavanagh & Twohy, and the failure of the City of Orange to abate the nuisance, the land of the plaintiffs was damaged as set forth in the complaint. The answer of the City of Orange denies that the city had knowledge of any excavation by Kavanagh & Twohy within thirty feet of the west bank of the creek until after the same had been done, and alleges that any such excavating was contrary to the terms of the lease; denies that said city ever created any nuisance or authorized the creation of any nuisance, or authorized any dredging contrary to or in violation of its agreement; and denies that any injuries to plaintiffs' land were caused by the failure of the city to abate the nuisance or its failure to restore the channel to its previous condition. As a separate defense, the city alleges that the injury to plaintiffs' land was caused by the installation in the creek-bed, above the city's land, of certain protection work put in by another party, and by the installation by Kavanagh & Twohy of a large rock and gravel plant near the east bank of Santiago Creek, over which the city had no control or supervision. The action was tried before a jury, resulting in a verdict in favor of the plaintiffs for $8,000. From the judgment which followed the City of Orange alone has appealed.

Appellant insists that the proximate cause of the damages to respondents' land was a diversion of the flood waters in the creek caused by certain protection work installed above, and by the gravel plant installed by Kavanagh & Twohy, over which the city had no control, and not any excavating done or any act of the city; it being claimed that the injuries to respondents' land would have occurred irrespective of any excavating carried on in the bed of the stream. Reliance is placed upon the testimony of one witness, who stated that in his opinion, in the condition the

bank was in at the point where the plaintiffs' land approached the creek, the land would have washed out if no excavating had taken place. The evidence upon this phase of the case is very voluminous, and we feel it is unnecessary to summarize it all here. Not only does the record show that in so stating this witness was referring to another minor excavation and not to those which are the basis of this action, but other witnesses testified that the flood in question did weaken and undermine the bank along respondents' property, and along the narrow strip of the city's property, which lay between it and the creek. The condition of the bed of the creek and the surrounding country for some distance up the stream, and the action of the water from the beginning to the height of the flood, were all quite fully and accurately described to the jury. A considerable section of the bank with many tall eucalyptus trees that had stood there for years, fell into the creek at once and were washed away about the third day of the flood, showing that an undermining process had been under way. As the bank was eaten away, not only further portions of the protecting strip of land owned by the city, but about an acre and a half of respondents' land disappeared. There was evidence that prior to the April, 1926, freshet, in order to divert water from the main workings of the lessees, a channel had been excavated to take the water over along the west bank of the creek along the plaintiffs' property. There was also expert evidence that this would endanger this bank by making it more subject to an undermining process. Without further reviewing the evidence on this point, we may say that after reading the same, we are fully satisfied that there was ample evidence from which the jury could find that the excavations made by Kavanagh & Twohy were the proximate cause of the damages to respondents' land, rather than the obstructions which are blamed by the appellant. The evidence relied upon by appellant raises no more than a conflict, which was resolved against it by the verdict of the jury.

The point most strenuously urged by appellant is that, even though the proximate cause of the injury to respondents' land was the excavations made by Kavanagh & Twohy, the City of Orange is not liable, in the absence of a showing of negligence upon the part of the city. In this con-

nection, the court's instructions to the jury are vigorously attacked. The many points raised along this line all relate to a vital conflict between the theories of the respective parties to this controversy, and may be treated under one head. The respondents rely upon the proposition that a nuisance was created by the excavations made during the existence of the first lease in the bed of Santiago Creek, and that the City of Orange having relet the property without abating this nuisance, is liable for injuries suffered by an adjoining land owner, irrespective of the question of negligence, as apart from the nuisance. On the other hand, the appellant insists that no nuisance was shown; that it was lawful to remove the gravel; that liability could arise from such lawful removal only through negligence in doing the same; and that the city is not liable for any negligence of which the lessees may have been guilty. While the right of appellant to use its property for any legitimate purpose and its power to lease the same cannot be disputed, on the other hand, one must use his own property in such a manner as not to infringe upon the rights of another. (Civ. Code, sec. 3514.) While, ordinarily, an owner of property is not liable for injuries to others arising through something done by his tenant, there is an exception in the case of conditions upon property which constitute a nuisance, in so far as the rights of others are concerned, which conditions, although not originally created by the owner, exist upon the leased premises at the time they are demised. (*Kalis* v. *Shattuck*, 69 Cal. 593 [58 Am. Rep. 568, 11 Pac. 346]; *Rider* v. *Clark*, 132 Cal. 382 [64 Pac. 564]; *Shellman* v. *Hershey*, 31 Cal. App. 641 [161 Pac. 132]; *Runyon* v. *City of Los Angeles*, 40 Cal. App. 383 [180 Pac. 837]; *Lucid* v. *Citizens' Inv. Co.*, 49 Cal. App. 257 [193 Pac. 161].) The principal legal question involved in this case is whether the same rule exists where the conditions are caused by a tenant, and thereafter the lease is renewed or a new lease given to the same parties, as was the case here. While no California authorities upon this point have been called to our attention, the question has been passed upon in a number of cases in other jurisdictions. The underlying reason for the rule that a landlord is not responsible for conditions created or maintained upon leased premises by a tenant, is the fact that the tenant-

ant has exclusive possession of the property, and the right of entry of the landlord being suspended during the term of the lease, his responsibility for removing objectionable conditions is likewise suspended. It naturally follows that when a landlord renews a lease or re-leases the premises to the same tenant, the very making of a new lease shows that at that time the landlord has a right of entry to the premises, and logically, having a right to enter and remedy the defect, if he re-leases with the dangerous conditions existing, the usual rule then applies that he is liable for injuries resulting from a condition amounting to a nuisance, which exists at the time the premises are demised. In such a case the Supreme Court of Oregon in *Fleischner* v. *Citizens' Real Estate & Inv. Co.*, 25 Or. 119 [35 Pac. 174, 176], said as follows:

"Upon the surrender of the old lease, the company was invested with the right of entry, and, as the nuisance was in existence upon the premises, it must be presumed to have been aware of the fact, and hence it is liable for its continuance under the exception to the general rule that it had demised premises with a nuisance then in existence thereon. The law is well settled that if the tenant creates a nuisance upon the premises during the term, by an unusual or extraordinary use thereof, although the landlord cannot be chargeable for the consequences in the first instance, yet, if he subsequently renews the lease with the nuisance thereon, he becomes chargeable for its continuance."

In *McLaughlin* v. *Kelly*, 230 Pa. St. 751 [50 L. R. A. (N. S.) 305, 79 Atl. 552, 554], the court said:

"If the sidewalk becomes defective while in the occupancy and control of a tenant resulting in injury to a third person, the tenant is liable, and, if the defect existed at the time of the demise, the landlord is responsible to the injured party. This is ruled in many cases." (Citing cases.) "The landlord cannot relieve himself from liability by placing the tenant in possession of the property. It is his duty to remove the nuisance or defect before he delivers the premises to the tenant, and, if injury results on account of his failure to perform this duty, he is not relieved from liability by reason of the tenant's possession. To relieve a landlord from liability under such circumstances would be as said by Barrows, J., in *Campbell* v. *Portland*

*Sugar Co.*, 62 Me. 552 [16 Am. Rep. 503], contrary to public policy and substantial justice, for it would not infrequently operate to deprive the injured party of all remedy except against an irresponsible tenant through whom a negligent landlord would reap the profits, without bearing the responsibilities of his proprietorship.

"While the defendant had been the owner of the property for 20 years or more, it seems that during all that time it had been in possession of a tenant. As noted above, the defendant let the premises until April 1, 1905, and during the preceding January he relet to the same tenant for a term of three years from April 1, 1905. The accident occurred in November, 1906. It was claimed by the plaintiff on the trial, and she submitted testimony to show, that the defect in the sidewalk existed at the time the premises were let to the tenant who was in possession when the plaintiff fell in the hole and was injured. It is contended by the defendant that by reason of the tenancy he was not in possession of the premises and therefore could not have repaired the grating. But this position is not tenable. The ground of the defendant's liability for the nuisance is that it existed at a time when he had the opportunity or power to abate or remove it and failed to do so. When the lease was executed and the term was created, the finding of the jury is that the defect existed. It was then his duty before renewing the lease to have abated the nuisance. It was within his power to do so, and his failure to exercise that power imposes liability. 'Nor do I perceive how the liability of the landlord in such cases,' says Magie, J., in *Ingwersen* v. *Rankin*, 47 N. J. Law, 18 [54 Am. Rep. 109], 'will be diminished by the fact that he renewed the tenant's lease without retaking actual possession. Such a conclusion would be opposed to the principles creating and governing his liability. If a nuisance is created during a term already existing, no liability falls on the landlord pending that term, for the reason that he has no legal means of abating the nuisance. He cannot enter upon his tenant's possession for that purpose, and would be a trespasser if he did so. But when the term expires his right of entry and power to abate at once arise, and for that reason a liability commences. If he declines to re-enter and abate the nuisance, and relets the premises, the liability which arose at the termination of the term will be neither discharged

nor abated. The test of his liability in such case is his power to have remedied the wrong. If he has, but fails to exercise, such power, his liability remains. The cases seem to be uniform in this view.' The same doctrine prevails in England, (citing cases)."

In *Clancy* v. *Byrne,* 56 N. Y. 129 [15 Am. Rep. 391], it was held that a landlord is not responsible for injuries caused by conditions existing upon the premises during the continuance of the lease, if the premises are in good repair when the lease is made but later become dangerous, unless he has expressly agreed to keep the premises in repair, or unless he has renewed the lease after the need of repair has shown itself. To the same effect, see *Matthews* v. *De Groff,* 13 App. Div. 356 [43 N. Y. Supp. 237]; *Lusk* v. *Peck,* 132 App. Div. 426 [116 N. Y. Supp. 1051]. In *Timlin* v. *Standard Oil Co. et al.,* 126 N. Y. 514 [22 Am. St. Rep. 845, 27 N. E. 786], it was held that where the owner of premises knows or by the exercise of reasonable care, can ascertain that there is upon the premises a nuisance dangerous to the public or to an adjoining owner, it is his duty to abate the nuisance before leasing the property; and, further, that if he leases the property without doing this, he is liable to anyone injured in consequence of the nuisance, although he himself did not create the same.

██ In the case before us, if the condition of the premises in question, at the time the property was re-leased to Kavanagh & Twohy in November, 1926, was so dangerous as to constitute a menace to the property of the plaintiffs and was such as would, inevitably, with the coming of high water in Santiago Creek in times of natural floods, cause the waters of this creek to be deflected and thrown against the west bank of the creek, near and along plaintiffs' land in such a manner as to undermine the same, these conditions were such an encroachment upon the rights of plaintiffs as to constitute a nuisance. Whether or not such was the case was a question of fact. (*People* v. *Park & Ocean R. Co.,* 76 Cal. 156 [18 Pac. 141]; *Blanc* v. *Klumpke,* 29 Cal. 156; *People* v. *Davidson,* 30 Cal. 379.) It was therefore proper to submit this question to the jury, which was done. The jury was instructed that if they found from a preponderance of the evidence that Kavanagh & Twohy excavated a channel near and along the boundary line of

the property of the city and of the plaintiffs, and along the foot of the west bank of the creek, and thereby lowered the natural bed of the creek and lowered and diverted the natural channel thereof, and such diverting and lowering caused or would cause the water in the creek to flow with increased depth and force against the west bank of the creek, and that this was causing and would cause an erosion of this bank, and would cause water to flow upon or against the plaintiffs' premises which would not have otherwise done so, then Kavanagh & Twohy are liable for having created a nuisance and for any damage resulting therefrom. The jury was further instructed that if a nuisance was thus created during the term of the George A. Simpson lease, and if said nuisance continued and was in existence when that lease was vacated and a new lease made to Kavanagh & Twohy, then the City of Orange is also liable for the continuance of such nuisance and from any damages resulting therefrom. Further, that if at the time of the second lease to Kavanagh & Twohy a nuisance existed upon the property, the City of Orange is liable for the continuance thereof and the injuries resulting therefrom; that upon the vacating and setting aside of the George A. Simpson lease, the City of Orange had a right of entry to the property with the right to enter thereon and abate any nuisance existing; and that if it failed to exercise such right and to abate any such nuisance, it was also liable. A number of other instructions along this line were given, which, all taken together, correctly instructed the jury as to the law in this regard. The jury were definitely instructed that if they found a nuisance had been created upon the property during the first lease, which was still there when the second lease was entered into, the city was also liable for any damages sustained by the plaintiffs by reason of such nuisance. It was thus left to the jury whether the dredging done under the first lease constituted a nuisance, and also whether this nuisance continued and still existed when the second lease was executed. Appellant contends that certain language used in instructions 7 and 8, to wit: "caused, was causing and would cause the water flowing in said creek to flow upon or against the plaintiffs' premises which water would not have thus flowed but for such excavating" indicated to the jury that they could award damages for injuries that

might occur in the future. Not only does the context show that this language referred to damage already caused, but in another instruction covering the measure of damages, these were limited to those already suffered.

■ While a number of objections are made by the appellant to various instructions given, it is unnecessary to treat them individually, as they all go to the proposition that it was necessary to show specific negligence on the part of the city, and that the city was not liable for conditions created by Kavanagh & Twohy. The views we have expressed upon the fundamental question involved render it unnecessary to go into detail in reference to each instruction complained of. Taking all of the instructions together, we feel that the jury were fully and fairly instructed as to the law, in view of the evidence shown by the record. (See *Henderson* v. *Los Angeles Tractor Co.*, 150 Cal. 689 [89 Pac. 976]; *Davis* v. *Button*, 78 Cal. 247 [18 Pac. 133, 20 Pac. 545].)

Complaint is also made of the refusal of the court to give an instruction based upon the claim that the proximate cause of the injuries to plaintiffs' land was the narrowing of the stream bed shortly above the point of injury, and the consequent deflection of the water by causes other than the excavations in the bed of the stream. This was fully covered by at least three instructions, where some such phrase as "which water would not have thus flowed but for such excavating, dredging, lowering and diverting" was included. The jury were thus instructed that unless they found that the waters of the creek were diverted and thrown against the bank in question by the excavating and dredging complained of, in a manner that would not have otherwise occurred, they should not find for the plaintiffs. It was hardly necessary to repeat that if the injury was caused by this other independent condition, the defendants were not liable.

After an examination of the voluminous record and briefs herein, we feel that the case was fully and fairly presented to the jury, and that the only serious question of law involved, as heretofore indicated, must be decided in favor of the respondents.

The judgment is affirmed.

Marks, Acting P. J., and Warmer, J., *pro tem.*, concurred.