[No. B032912. Second Dist., Div. Five. May 17, 1989.]

MARTIN MORA et al., Plaintiffs and Appellants, v.
BAKER COMMODITIES, INC., Defendant and Respondent.

**COUNSEL**

Gage, Mazursky, Schwartz, Angelo & Kussman, Christopher E. Angelo and Steven B. Stevens for Plaintiffs and Appellants.

Yusim, Stein & Hanger and Robert E. Levine for Defendant and Respondent.

**OPINION**

ASHBY, J.—Appellant Martin Mora appeals from the entry of summary judgment in favor of respondent Baker Commodities, Inc.[1] We reverse with directions.

### STATEMENT OF CASE

The underlying suit arose after appellant was seriously injured when a vessel containing ammonia gas exploded. The vessel was part of a refrigeration system located on the roof of property owned by respondent and leased

---

[1] Appellant's wife, Martha Mora, also filed suit for loss of consortium. (*Rodriguez* v. *Bethlehem Steel Corp.* (1974) 12 Cal.3d 382 [115 Cal.Rptr. 765, 525 P.2d 669].)

to appellant's employer. The property was being used as a meat packing plant.

Appellant's complaint asserted nine causes of action and named numerous defendants, including the manufacturer, component part manufacturer, installer, supplier of the vessel, appellant's employer (Stockton Corporation), and respondent as the owner and lessor of the property. Respondent brought a summary judgment motion alleging it was not liable for appellant's injuries. The basis of the motion was the assertion that as a commercial lessor respondent was not liable for injuries sustained by third persons while on premises leased to respondent's commercial tenant. The trial court granted the motion and entered summary judgment in favor of respondent. On appeal the only issues raised relate to strict liability and negligence. We find that appellant has no cause of action in strict liability but there are triable issues of fact on the negligence cause of action.

FACTS

Star Packing Company, Inc. (Star) owned real property located at 4100 East Bandini Blvd., Los Angeles, California. On December 31, 1975, Star leased the property and equipment thereon for five years to Serv-U Meat Packing Co. (Serv-U) for the purposes of killing animals and processing meat products.

In June 1980, respondent purchased the industrial property from Star and was assigned all interest in the lease with Serv-U.

On December 30, 1980, respondent and Serv-U negotiated and executed a 26-page, 60-month lease. The lease designated as the "premises" of the lease the real property located at 4100 East Bandini Boulevard and items listed as "personal property," including the vessel which exploded. The vessel, which was insulated, was described by one expert as four feet by six feet and by another as "a cylindrical vat with 'dish' type ends, approximately three feet in diameter and four feet tall." The evidence is contradictory as to whether the vessel was secured to the roof by bolts, stood on angle-iron legs, or if its legs, not secured by bolts, stood on stabilizing plates. However, there was no disagreement that the vessel, made in the 1920's or 1930's, was part of a large refrigerator system specifically designed for the building. The system was located on the roof and included vats, pumps, evaporators, accumulators, blowers and seven vessels which held ammonia gas, including the one which exploded. One blower had an estimated capacity of 10 tons, the steel and concrete cradle was 36 feet by 18 feet and one evaporator had a 40-ton capacity. All parts of the system were connected through the building and through the roof by pipes and wiring.

The December 30, 1980, lease specified that the premises were to be used to slaughter animals and process meat, required the tenant to maintain property and bodily injury insurance naming respondent as an additional insured, reserved the right of respondent to enter the premises to inspect and make repairs, and allowed the tenant to install and remove its own "trade fixtures." In addition, the lease required the tenant to maintain and repair the real property as well as any item designated as "personal property."

The tenant (Serv-U) subsequently subleased the premises to a subtenant, who on May 14, 1984, subleased the property to appellant's employer, Stockton. Respondent agreed to the sublease with Stockton which obligated Stockton to perform all obligations of the December 30, 1980, lease. All subtenants utilized the property as a meat packing plant.

Besides leasing the property, respondent also operated a meat rendering business. A meat renderer collects the inedible meat by-products and processes them for fertilizer and dog food. Respondent's employees entered the premises several times a day to retrieve the inedible meat portions collected in a large receptacle.

On July 14, 1984, appellant was on the roof of the building when the vessel exploded releasing approximately 1,800 gallons of ammonia gas into the air and causing severe injuries to appellant.[2] To inspect the vessels after the accident they were x-rayed.[3] The inspection revealed that the vessel exploded when a weld gave way. There was no evidence that at any time prior to the accident respondent inspected the real property or the vessel.

This matter comes to us after respondent's summary judgment motion was granted and judgment was entered in favor of respondent. In reviewing the summary judgment our responsibility is to determine if "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c); *Burton* v. *Security Pacific Nat. Bank* (1988) 197 Cal.App.3d 972, 976 [243 Cal.Rptr. 277]; *AARTS Productions, Inc.* v.

---

[2] As a result of the accident, appellant (29 years old) was completely disabled and now requires oxygen 12 hours per day. Approximately 20 other people were also injured including 2 employees in nearby businesses who were hospitalized.

[3] A California Division of Occupational Safety and Health investigation conducted after the accident showed numerous Code of Regulations (designated as Administrative Code until 1988) violations including that the vessel did not have suitable operative pressure gauges, the safety valves were corroded, the welds on the tank were made by a person other than a manufacturer, and there was no evidence of inspection and maintenance necessary to assure operation of the pressure vessel. (Cal. Code Regs., tit. 8, §§ 465, subd. (e), 467, subds. (a), (b), 3328, subd. (f).)

*Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064-1065 [225 Cal.Rptr. 203].)

STRICT LIABILITY

■ Appellant first contends respondent is strictly liable for appellant's injuries because respondent owned the real property upon which appellant was injured. We disagree.

In *Becker* v. *IRM Corp.* (1985) 38 Cal.3d 454 [213 Cal.Rptr. 213, 698 P.2d 116], the Supreme Court expanded the applicability of strict liability as enunciated in *Greenman* v. *Yuba Power Products, Inc.* (1963) 59 Cal.2d 57 [27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049] and held that a lessor of *residential* property "is strictly liable in tort for injuries resulting from a latent defect in the premises when the defect existed at the time the premises were let . . . ." (*Becker* v. *IRM Corp., supra,* 38 Cal.3d at p. 464.) The discussion of strict liability in *Becker* was based on the implied warranty of habitability and "the need to insure safe, adequate housing for modern, urban residential tenants who, like ordinary consumers, are powerless to protect themselves." (*Muro* v. *Superior Court* (1986) 184 Cal.App.3d 1089, 1096 [229 Cal.Rptr. 383].) However, renting "[h]ousing is an entirely different type of real estate activity" (*id.* at p. 1098) than leasing commercial property. The concept of strict liability is not applied to the lessors of commercial or industrial properties. (*Ibid.*)

■■■■ Appellant suggests strict liability is an appropriate cause of action because the vessel which exploded was "personal" rather than real property.[4] We need not draw the distinction suggested by appellant. For purposes of discussion, we assume the vessel which exploded was not affixed nor intended to be annexed to the roof and was technically "personal property." This, however, does not control the issue as to whether respondent, as the owner and lessor of the vessel, can be held strictly liable.

In *Price* v. *Shell Oil Co.* (1970) 2 Cal.3d 245 [85 Cal.Rptr. 178, 466 P.2d 722], relied upon by appellant, the court held that commercial bailors and lessors of personal property, such as those leasing trucks with movable ladders, could be held strictly liable because, similar to manufacturers,

---

[4]Real property is land, that which is affixed to land, and that which is immovable by law. (Civ. Code, § 658.) At common law an item "affixed to land" was a "fixture." (Civ. Code, § 660.) Three factors are utilized to determine if an item has become a fixture: " '(1) physical annexation; (2) adaptation to use with real property; (3) *intention* to annex to realty.' " (*Cornell* v. *Sennes* (1971) 18 Cal.App.3d 126, 132 [95 Cal.Rptr. 728], citing 1 Witkin, Summary of Cal. Law (1960) Personal Property, § 23, p. 793.)

distributors, and retailers, they were in the business of leasing property, and they placed the defective item on the market and in the stream of commerce knowing it was to be used by the public without inspection for defects. (See also *Fakhoury* v. *Magner* (1972) 25 Cal.App.3d 58 [101 Cal.Rptr. 473].) Here, however, the vessel which exploded was not placed on the market and into the stream of commerce. Respondent, an industrial landlord, was not engaged in the business of leasing personal property to the public. Rather, the vessel was part of an enormous refrigeration system on the roof of industrial real property. The system, designed for the building, provided the refrigeration necessary for the functioning of the food processing plant. The vessel in question, as part of the refrigeration system, was an integral part of the commercial building. Whether or not the vessel was "personal" or "real" property, the concept of strict liability is not applicable since it does not apply to commercial real property.

## NEGLIGENCE

 Appellant contends summary judgment was inappropriate as to the negligence cause of action because respondent did not demonstrate that judgment was required as a matter of law. We agree.

At common law the duties of landowners and occupiers were based upon artificially classifying the plaintiff as either a trespasser, licensee, or invitee. The lease was seen as transferring the rights and all obligations based upon ownership of the property to the tenant for the length of the leasehold. (*Becker* v. *IRM Corp., supra,* 38 Cal.3d at p. 461; 64 A.L.R.3d 339, Modern Status of Landlord's Tort Liability for Injury or Death of Tenant or Third Person Caused by Dangerous Conditions of Rented Premises.) The general rule developed that a landlord was not responsible for injuries from dangerous conditions on the property which occurred after the tenant took possession even if the defect may have been discoverable. (*Wylie* v. *Gresch* (1987) 191 Cal.App.3d 412, 417 [236 Cal.Rptr. 552]; *Uccello* v. *Laudenslayer* (1975) 44 Cal.App.3d 504, 510 [118 Cal.Rptr. 741, 81 A.L.R.3d 628].) Dissatisfaction with the common law arbitrary classifications, the harsh results which left injured parties without effective remedies, and the unsuitability of the rule to the modern urban environment, led courts to develop numerous exceptions to the general rule effectively swallowing up the rule. (*Rowland* v. *Christian* (1968) 69 Cal.2d 108, 116-118 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496]; Prosser & Keeton, The Law of Torts, (5th ed. 1984) § 63, pp. 434, 434-435.)[5]

---

[5] The exceptions to the general rule imposed liability on the lessor of property when the lessor volunteered or contracted to repair the premises and failed to do so, when the lessor knew of an undisclosed danger, when the leased premises were to be open to the public and there was a known dangerous condition, when the injuries occurred in an area which remained

In the landmark case of *Rowland* v. *Christian, supra,* 69 Cal.2d 108, the Supreme Court rejected the distinctions made by the common law as to invitees, licensees, and trespassers, and held that an owner or occupier of land owed the same standard of care as others. Negligence was based upon whether, in the management of one's property, reasonable care was used to prevent injury to others. (*Id.* at p. 119.) Civil Code section 1714 codifies this negligence standard of care and reads in pertinent part: "Every one is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, . . ."

Respondent contends that once its property was leased to its commercial tenant respondent could not be held responsible for any injuries incurred thereon. This contention oversimplifies a commercial landowner's responsibilities.

Respondent's contention is based on the assertion that as a matter of law respondent owed no duty to appellant. ■ Duty is an obligation to take ordinary care under all the circumstances. (*Rowland* v. *Christian, supra,* 69 Cal.2d at p. 112.) Duty is primarily a question of law in which the foreseeability of risk to another is an important consideration. (*Weirum* v. *RKO General, Inc.* (1975) 15 Cal.3d 40, 46 [123 Cal.Rptr. 468, 539 P.2d 36]; *Isaacs* v. *Huntington Memorial Hospital* (1985) 38 Cal.3d 112, 124-125 [211 Cal.Rptr. 356, 695 P.2d 653].) Duty "is the court's 'expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.'" (*Weirum* v. *RKO General, Inc., supra,* 15 Cal.3d at p. 46, quoting Prosser, Law of Torts (4th ed. 1971) pp. 325-326.) ■ "Among the criteria for determining whether a landlord acted with ordinary care in the management of his property are: the likelihood of injury, the probable seriousness of such injury, the burden of reducing or avoiding the risk, and his degree of control over the risk-creating defect [citation]." (*Evans* v. *Thomason* (1977) 72 Cal.App.3d 978, 984-985 [140 Cal.Rptr. 525]; *Brennan* v. *Cockrell Investments, Inc.* (1973) 35 Cal.App.3d 796, 801 [111 Cal.Rptr. 122].)

In determining if there is a basis for tortious liability for conditions on land, California courts modernly "have placed major importance on the existence of possession and control" (*Preston* v. *Goldman* (1986) 42 Cal.3d 108, 119 [227 Cal.Rptr. 817, 720 P.2d 476]; *Uccello* v. *Laudenslayer, supra,* 44 Cal.App.3d at p. 511), because this factor is relevant in determining if the

under the landlord's control, when the landlord negligently repaired, and when a safety law was violated. (*Becker* v. *IRM Corp., supra,* 38 Cal.3d at p. 463; *Rowland* v. *Christian, supra,* 69 Cal.2d at pp. 114-115; *Uccello* v. *Laudenslayer, supra,* 44 Cal.App.3d at p. 511; Rest.2d Torts, §§ 355-362.)

landlord acted reasonably under the circumstances. It would not be reasonable to charge a lessor with liability if the lessor did not have the power, opportunity and ability to eliminate the danger. (*Rosales* v. *Stewart* (1980) 113 Cal.App.3d 130, 134 [169 Cal.Rptr. 660].) █ For example, the sale of property terminates a vendor's liability for alleged negligent construction of an improvement on the property because after the property is sold, the vendor does not have the opportunity nor ability to control the property. (*Preston* v. *Goldman, supra,* 42 Cal.3d 108.)

In discussing the duties of residential landlords courts consider such factors as the importance of complying with habitability requirements, the scarcity of housing leaving tenants in an unequal bargaining position, the impracticability of requiring tenants to make repairs and the burden to them, the foreseeability of harm, the burden to landlords in avoiding risks, and the fact that residential landlords have the primary responsibility to maintain properties. (*Becker* v. *IRM Corp., supra,* 38 Cal.3d at p. 468; see also Civ. Code, § 1941.)

█ Here, the subject premises were leased to a commercial tenant for an industrial purpose and habitability is not in issue. It was practical to expect that the tenant would maintain and repair the premises as the carefully negotiated lease so obligated the tenant. There does not appear to be a shortage of commercial properties. (*Muro* v. *Superior Court, supra,* 184 Cal.App.3d at p. 1098.) Further, the commercial purpose of this property was a slaughter house, an inherently dangerous commercial activity. █ A landlord cannot be held to be responsible for all dangers inherent in a dangerous business. If the property or equipment necessary for the functioning of the property, such as a refrigeration system, was safe when transferred to the tenant, used in the manner for which it was intended and the lessor/owner has given up control of the property, the commercial landlord cannot be held responsible for accidents occurring after the property is transferred. (Cf. *Bisetti* v. *United Refrigeration Corp.* (1985) 174 Cal.App.3d 643, 650 [220 Cal.Rptr. 209].)

█ Appellant also contends respondent did not relinquish control of the building. We disagree. Respondent did not keep control of the premises by coming on to the property to retrieve inedible meat as part of its rendering business. Respondent's employees entered the premises as other persons who did business with appellant's employer. In addition, forcing appellant's employer (Stockton) to list respondent as a named insured on the insurance policy covering the property was simply good business practice, it did not demonstrate that respondent retained control of the building. Further, as

part of the lease respondent retained the right to enter the premises to inspect and make repairs. ■ However, respondent's obligation to do so occurs only if respondent had some reason to know there was a need for such action. (*Swanberg* v. *O'Mectin* (1984) 157 Cal.App.3d 325, 332 [203 Cal.Rptr. 701]; *Bisetti* v. *United Refrigeration Corp., supra,* 174 Cal.App.3d at p. 649.) ■ Here there were no facts to indicate that respondent should have entered the premises for this purpose after the property was transferred to the tenant. Thus, respondent, as the commercial landowner, owed no duty to appellant for defective conditions which occurred after the property was transferred to its commercial tenant(s) if the premises were reasonably safe at the time the tenant(s) took possession.[6]

However, contrary to respondent's assertion, respondent, a commercial landowner, cannot totally abrogate its landowner responsibilities merely by signing a lease. ■ As the owner of property, a lessor out of possession must exercise due care and must act reasonably toward the tenant as well as to unknown third persons. (*Becker* v. *IRM Corp., supra,* 38 Cal.3d at p. 468; *Wylie* v. *Gresch, supra,* 191 Cal.App.3d at pp. 418-419.) ■ At the time the lease is executed and upon renewal a landlord has a right to reenter the property, has control of the property, and must inspect the premises to make the premises reasonably safe from dangerous conditions. (Cf. *Burroughs* v. *Ben's Auto Park, Inc.* (1945) 27 Cal.2d 449, 453, 454 [164 P.2d 897]; *Swanberg* v. *O'Mectin, supra,* 157 Cal.App.3d at p. 330; *Uccello* v. *Laudenslayer, supra,* 44 Cal.App.3d at pp. 512-513.) Even if the commercial landlord executes a contract which requires the tenant to maintain the property in a certain condition, the landlord is obligated at the time the lease is executed to take reasonable precautions to avoid unnecessary danger.[7] For example, in *Dennis* v. *City of Orange* (1930) 110 Cal.App. 16 [293 P. 865] the commercial landlord, the City of Orange (the City), leased commercial property for the dangerous purpose of excavation. Thereafter, the lease was assigned to a subtenant who, in violation of a lease provision, excavated too close to a nearby creek. The subtenant's actions resulted in a nuisance by creating erosion to the creek and damage to plaintiff's nearby property. The City, the commercial landlord, alleged that it had no control of the excavation or the property, that the excavation by the subtenant was contrary to the terms of the lease, and denied that the City created or authorized the excavation. The court held that "when a landlord renews a

---

[6]Our discussion does not deal with a commercial landlord's responsibilities in other factual situations such as if a commercial landlord concealed a dangerous condition (cf. *Rowland* v. *Christian, supra,* 69 Cal.2d at p. 119), or if the injury occurred on a part of the premises which remained in the landlord's control, e.g., a walkway utilized by many tenants.

[7]This case does not present the question of whether a landlord found liable for a failure to inspect may thereafter properly seek indemnity from the tenant who violated a contractual provision to maintain or repair.

lease or re-leases the premises to the same tenant, the very making of a new lease shows that at that time the landlord has a right of entry to the premises, and logically, having a right to enter [the landlord must] remedy the defect, . . ." (*Id.* at p. 23.)

However, the landlord's responsibility to inspect is limited. Like a residential landlord, the duty to inspect charges the lessor "only with those matters which would have been disclosed by a reasonable inspection." (*Becker* v. *IRM Corp., supra,* 38 Cal.3d at p. 469; *Swanberg* v. *O'Mectin, supra,* 157 Cal.App.3d at p. 330.) The burden of reducing or avoiding the risk and the likelihood of injury will affect the determination of what constitutes a reasonable inspection. The landlord's obligation is only to do what is reasonable under the circumstances. The landlord need not take extraordinary measures or make unreasonable expenditures of time and money in trying to discover hazards unless the circumstances so warrant. When there is a potential serious danger, which is foreseeable, a landlord should anticipate the danger and conduct a reasonable inspection before passing possession to the tenant.[8] However, if no such inspection is warranted, the landlord has no such obligation.

Here, respondent, as the moving party of the summary judgment motion, had the burden to show as a matter of law that there were no triable issues of fact. (*Becker* v. *IRM Corp., supra,* 38 Cal.3d at p. 458; *Rowland* v. *Christian, supra,* 69 Cal.2d at p. 111.) The affidavits presented did not show that at the time the December 30, 1980, lease was executed there was an inspection, nor were facts presented bearing upon the necessity for an inspection, nor facts which showed that any inspection conducted was reasonable under the circumstances.[9] Respondent's failure to provide these facts indicates that granting the summary judgment motion as to the negligence cause of action was inappropriate. We note that upon remand it may be determined, with the introduction of additional information, that under the circumstances no inspection was warranted.

---

[8] Lessors also have the duty to take reasonable steps to prevent injury when the landowner knows of a dangerous situation, and the landowner has the right and ability to reenter. (*Leakes* v. *Shamoun* (1986) 187 Cal.App.3d 772, 776 [232 Cal.Rptr. 171]; see e.g., *Uccello* v. *Laudenslayer, supra,* 44 Cal.App.3d 504 [a landlord is liable for third persons injured by a dog if the landlord knows the tenant is going to keep a vicious dog on the premises and the landlord has the right to reenter the premises]; *Rosales* v. *Stewart, supra,* 113 Cal.App.3d 130 [if the landlord knows his tenant is going to use the rented property as a firing range the landlord may be liable to third persons injured by a bullet].)

[9] Once a court finds a duty exists, it is for the jury to determine if the inspection was reasonable under the circumstances. (*Isaacs* v. *Huntington Memorial Hospital, supra,* 38 Cal.3d at p. 131.)

The judgment is reversed and cause remanded for further proceedings consistent with the views expressed herein. Each party to bear their own costs.

Lucas, P. J., and Boren, J., concurred.