Filed 3/9/15  Rychlec v. CBS Studio Center CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| PAUL RYCHLEC, | B254500 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. EC059134) |
| v. | |
| CBS STUDIO CENTER et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Daniel J. Buckley, Judge.  Affirmed.

Law Office of Gerald Philip Peters and Gerald P. Peters for Plaintiff and Appellant.

Gilbert, Kelly, Crowley & Jennett, Timothy W. Kenna, Rebecca J. Smith and Paul A. Bigley for Defendants and Respondents.

_____

Plaintiff and appellant Paul Rychlec (Rychlec) appeals a judgment following a grant of summary judgment in favor of defendants and respondents CBS Studio Center and CBS Broadcasting, Inc. (collectively, CBS).

CBS licensed a sound stage to Open 4 Business Productions, LLC (Producer), a production company, for Producer's exclusive use while it filmed 12 episodes of a television series. Rychlec was an employee of Producer. While working on the sound stage, Rychlec was injured by a wooden plank which had been placed against a wall by Producer's employees and which fell and struck Rychlec in the head.

The trial court granted summary judgment in favor of CBS on the ground it did not owe Rychlec a duty to monitor safety on the set of the show. We reach the same conclusion and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

CBS licensed Stage 10 at CBS Studio Center in Studio City to Producer for its exclusive working use. On August 17, 2010, Rychlec, an employee of Producer, was working at Stage 10 as a studio grip on Producer's production of the television show "*Outsourced*." Crew members would lean long boards against the wall; the boards were unsecured. While acting in the course and scope of his employment, Rychlec sustained injury when he was struck on the head by a falling wooden plank that had been leaning against a wall.[1]

1. *Pleadings.*

On August 14, 2012, Rychlec filed suit against CBS alleging causes of action for premises liability and negligence, and that CBS was liable because it "knew or should have known of the dangerous condition on the property [and] failed to adequately warn or guard against it."

2. *Motion for summary judgment*.

On October 9, 2013, CBS filed a motion for summary judgment, contending: Rychlec's damages arose out of and in the course of his employment, making Workers'

---

[1] Rychlec received Workers' Compensation benefits for his injury.

2

Compensation his exclusive remedy; CBS acted in compliance with its contractual obligations toward Producer; CBS was not responsible for safety on the set of Producer's production of *Outsourced*; CBS did not fail to own, maintain, manage, operate or control the set of the production in a reasonably safe manner; CBS lacked actual or constructive notice of a dangerous condition on the set prior to this accident; and CBS did not negligently, willfully or maliciously fail to warn or guard against a dangerous condition.

3. *Opposition papers.*

In resisting summary judgment, Rychlec argued, inter alia, the terms of the contract established CBS owed a duty to provide a safe workplace on Stage 10; a triable issue existed as to whether CBS knew or should have known of the danger presented by the unsecured boards; a factual issue existed as to whether CBS had a safety supervisor present on Stage 10; CBS had a statutory obligation under Cal-OSHA to provide a safe workplace for Producer's employees and he was injured as a result of CBS's violation of a Cal-OSHA safety order.

4. *Trial court's ruling.*

On January 3, 2014, after hearing the matter, the trial court granted summary judgment, concluding CBS "established that there is no disputed issue of fact as CBS did not have a duty to provide or inspect the safety on the set of *Outsourced*" and that responsibility for "safety on the set of *Outsourced* rested with [Producer]."

The trial court reasoned, "Pursuant to Paragraph 4(a) of the [contract between CBS and Producer with respect to the subject premises], Defendant CBS did not have access to the set except for emergencies. Paragraph 5, subd. (a)- (f), entitled 'stage safety' provides that CBS initially provide a safe set to [Producer]; but also that it be inspected by the producer. Paragraph 9, entitled, 'Producer control' provides that the premises be under the direction and control of producer at all times. The agreement required that Defendant provide equipment and laborers, and a safe set open for business, but this has nothing to do with the requirement to provide safety or maintain safety on a daily basis. The contract specifically requires that the producer inspect set for unsafe conditions. While the contract mandates that Defendants maintain the premises in a safe

3

condition in compliance with OSHA, . . . this does not evidence the assignment of day to day safety."

This appeal followed.[2]

## CONTENTIONS

Rychlec contends that in moving for summary judgment CBS did not shift the burden because: CBS's papers showed a factual dispute as to whether there was a CBS safety supervisor on Stage 10; per the terms of the contract CBS had a duty to provide a safe workplace; CBS failed to establish it did not owe a duty to Producer's employees to provide a safe workplace; CBS's motion presented conflicting evidence as to whether CBS knew or should have known of the danger presented by the unsecured boards; and CBS presented no evidence of compliance with the terms of the contract or industry standards.

Rychlec further contends: CBS had a statutory duty, per Cal-OSHA to provide a safe workplace to Producer's employees; he was injured as a result of CBS's violation of a Cal-OSHA safety order; the trial court committed prejudicial error in overruling his evidentiary objections; CBS's motion relied on statements which were factually untrue; and CBS's contention that Rychlec's lawsuit was barred by the Worker's Compensation Act is meritless because Rychlec was not CBS's employee.

## DISCUSSION

1. *Standard of appellate review.*

"We independently review an order granting summary judgment. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860.) We determine whether the court's ruling was correct, not its reasons or rationale. (*Salazar v. Southern Cal. Gas Co*. (1997) 54 Cal.App.4th 1370, 1376.) 'In practical effect, we assume the role of a trial court and apply the same rules and standards which govern a trial court's determination of a motion

---

[2] We note that subsequent to the grant of the motion for summary judgment, a final judgment was not entered below until October 29, 2014. Thus, the notice of appeal filed February 20, 2014 was premature but nonetheless was timely. (Cal. Rules of Court, rule 8.104(d).)

for summary judgment.' (*Zavala v. Arce* (1997) 58 Cal.App.4th 915, 925.)  We review for abuse of discretion any evidentiary ruling made in connection with the motion. [Citation.]" (*Shugart v. Regents of University of California* (2011) 199 Cal.App.4th 499, 504-505.)  In performing our de novo review, we view the evidence in the light most favorable to Rychlec, as the party opposing summary judgment.  (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768.)

The pivotal issue is whether CBS owed a duty of care to Rychlec.  Duty is a question of law for the court, to be reviewed de novo on appeal.  (*Cabral v. Ralphs Grocery Co.* (2011) 51 Cal.4th 764, 770.)

2. *Trial court properly found CBS did not owe Rychlec a duty*.

Rychlec's claim against CBS is not that the sound stage itself was defective or in need of repair.  Rychlec was injured as a result of Producer's crew creating a dangerous condition by leaning unsecured wooden planks against a wall of the sound stage. Rychlec's theory, as against CBS, is that CBS is liable because it owed him a duty to ensure that Producer was not creating an unsafe condition within the sound stage. Rychlec asserts CBS owed him a duty to inspect for such danger, and thereafter, either to prevent the hazard or to warn him of it.

a. *General principles re landowner liability*.

"The elements of a negligence cause of action are the existence of a legal duty of care, breach of that duty, and proximate cause resulting in injury.  (*Ladd v. County of San Mateo* (1996) 12 Cal.4th 913, 917-918.)  The elements of a cause of action for premises liability are the same as those for negligence:  duty, breach, causation, and damages. (*Ortega v. Kmart Corp.* (2001) 26 Cal.4th 1200, 1205; see Civ. Code, § 1714, subd. (a).)" (*Castellon v. U.S. Bancorp* (2013) 220 Cal.App.4th 994, 998.)

In the "landmark case of *Rowland v. Christian* [(1968)] 69 Cal.2d 108, the Supreme Court rejected the distinctions made by the common law as to invitees, licensees, and trespassers, and held that an owner or occupier of land owed the same standard of care as others.  Negligence was based upon whether, in the management of one's property, reasonable care was used to prevent injury to others.  (*Id*. at p. 119.)  Civil

Code section 1714 codifies this negligence standard of care and reads in pertinent part: 'Every one is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, . . .' " (*Mora v. Baker Commodities, Inc*. (1989) 210 Cal.App.3d 771, 779 (*Mora*).)

Among " 'the criteria for determining whether a [landowner] acted with ordinary care in the management of his property are:  the likelihood of injury, the probable seriousness of such injury, the burden of reducing or avoiding the risk, *and his degree of control over the risk-creating defect* [citation].'  [Citations.]" (*Mora, supra*, 210 Cal.App.3d at p. 779, italics added.)  In determining if there is a basis for tortious liability for conditions on land, "California courts modernly '*have placed major importance on the existence of possession and control*' [citations], because this factor is relevant in determining if the [landowner] acted reasonably under the circumstances.  It would not be reasonable to charge a [landowner] with liability if the [landowner] did not have the power, opportunity and ability to eliminate the danger." (*Mora, supra*, 210 Cal.App.3d at pp. 779-780; accord, *Preston v. Goldman* (1986) 42 Cal.3d 108, 119 [the right of supervision and control goes to the very heart of the ascription of tortious responsibility].)

b.  *The contract between CBS and Producer with respect to the subject premises.*

On or about July 19, 2010, CBS entered into a contract with Producer to furnish, on a license basis, sound stages 10 and 12 for Producer's  exclusive use for the production of 12 episodes of *Outsourced*.  The licensed facilities included these two sound stages, comprising about 36,000 square feet, as well as office space.  The contract specified, "This Agreement is not a lease, and the relationship between Studio and Producer is not the relationship of landlord and tenant, but of licensor and licensee."

The contract restricted CBS's access to the subject premises.  It provided the facilities licensed to Producer "shall at all times be under the direction and control of Producer."  The contract specified, "*Except in the case of emergencies, during any access*

6

*by Studio or its agents, employees, contractors or representatives to the portions of the premises that are for Producer's exclusive use*, (1) such party so entering upon such areas must give Producer reasonable prior notice as to such access, (2) such party so entering upon such areas shall at all times be accompanied by a representative of Producer and (3) such party so entering upon such areas shall cause as little inconvenience, annoyance and disturbance to Producer as may be reasonably possible under the circumstances and shall comply with all reasonable security and crisis management policies and procedures as may then be in effect with respect to Producer's operations in such areas." (Italics added.)

The contract included a warranty by CBS "that it will maintain its facilities in operating condition satisfactory for production [and] will repair and maintain its premises in a safe condition."

The contract also contained the following provision: "5. Stage Safety; Studio places the highest priority on the safety and protection of all personnel involved in the production, including all persons employed by Producer and by Studio. In connection with Producer's occupancy and/or use of each stage provided by Studio to Producer hereunder, the following terms and conditions shall at all times be applicable: [¶] (a) Studio will demonstrate to Producer the use of the custom fall safety system that has been installed in the grid on the stage. Studio and Producer will inspect the fall safety system for apparent cable displacement or damage, or apparent kinks to the cable system; [¶] (b) Producer will inspect all of the catwalks on the stage for necessary handrails, kneerails, and toerails, tripping hazards or other unsafe conditions; [¶] (c) All firefighting equipment, including fire extinguishers and fire hoses, are in place on the stage. Producer will acknowledge that use of such equipment has been explained and demonstrated by Studio to Producer; [¶] (d) Producer shall at all times keep all emergency exits clear and shall maintain a minimum four foot fire lane around the perimeter of the stage; [¶] (e) Upon completion of the production, Producer shall deliver possession of the stage to Studio in the same condition as existing on the date that Producer commenced occupancy of the stage, reasonable wear and tear excepted. [¶] (f)

7

Prior to Producer's occupancy and/or use of each stage provided by Studio to Producer hereunder, Producer shall execute a Safety Acknowledgement and Inspection Stage Occupancy Certification in the form attached hereto as Exhibit C."

      c. *Pursuant to the contract, duty for day to day safety on the production set rested with Producer.*

CBS's duty was to furnish Producer with safe production facilities, and Rychlec does not contend CBS failed to do so.

Under the contract between Producer and CBS, once CBS delivered the premises to Producer, Stage 10 came under Producer's control, and for its exclusive use during its production of *Outsourced*. Pursuant to paragraph 4 thereof, CBS licensed sound stages 10 and 12 for Producer's "exclusive use" during the term of the agreement, i.e., for the production of 12 episodes of *Outsourced*. The contract specified that the facilities provided for Producer's exclusive use pursuant to paragraph 4 "shall at all times be under the direction and control of Producer." Further, except for emergencies, CBS was barred from entering "the portions of the premises that are for Producer's exclusive use" without prior notice. Accordingly, Producer, as the entity with exclusive possession and control of the premises, was responsible for day to day safety on the set.

      d. *Rychlec's contention regarding the alleged presence of CBS's safety supervisor on the set.*

Rychlec contends a triable issue exists with respect to the presence of a CBS safety supervisor on the set of Stage 10, which would have made CBS aware of the hazard posed by the unsecured boards. Rychlec relies on four CBS witness declarations, as well as his own deposition testimony, to establish the daily presence of an alleged unidentified female CBS safety supervisor.

CBS, in turn, relied on evidence that its employee presence at Stage 10 on August 17, 2010 was limited to someone coming in to turn on the air conditioning and power in the morning, and someone else coming in the evening, after production had ended for the day, to shut everything down. Also, CBS presented evidence that it employed three safety personnel, none of whom were female.

8

To raise a triable issue in this regard, Rychlec cites (1) the declaration of Yana Nirvana ["on almost a daily basis, I was informed and believed that, CBS had a Safety Supervisor check in at Stage 10. . . [I]t was understood by me that they were with CBS and that they were with their Safety Department"]; (2) the declaration of Gregg Norton ["I believed that, CBS had a Safety Supervisor who inspected the stages. . . . [I]t was my belief that CBS had a safety person and that they were part of the CBS Safety Department"]; (3) the declaration of Ben Medley ["on almost a daily basis CBS had a Safety Supervisor check in at Stage 10. Because I never worked with this person I am unaware of their name"]; and (4) the declaration of Rodney Veto ["based on common practice . . . it is reasonable to believe that CBS had safety personnel checking in at Stage 10 on a regular basis. On this particular show, on an almost daily basis, I was informed and believed that, CBS had a Safety Supervisor check in at Stage 10"].

In addition, Rychlec relies on his own deposition testimony, which contains the following colloquy: "Q. Okay. As you sit here today, are you able to identify a single CBS employee that was on the set of '*Outsourced*' and charged with responsibilities of any kind during the months that you were working before this incident occurred? [¶] A. There was. But I don't know who the person was. I know there was somebody always watching, always around the CBS lot that was –it was their safety guy, whoever it was, gal or whatever. There was somebody there. When construction's building sets, there was somebody there for safety for CBS."

Thus, Rychlec and the four witnesses were unable to identify a single person from CBS responsible for safety on the set. Moreover, "[d]eclarations based on information and belief are insufficient to satisfy the burden of either the moving or opposing party on a motion for summary judgment or adjudication." (*Lopez v. University Partners* (1997) 54 Cal.App.4th 1117, 1124 (*Lopez*).) [3] Thus, there was insufficient evidence to raise a

---

[3]     Rychlec contends the four witness declarations are sufficient to raise a triable issue because they were submitted as part of CBS's moving papers. However, "[d]eclarations based on information and belief are insufficient to satisfy the burden *of either the moving or opposing party* on a motion for summary judgment or summary adjudication."

9

triable issue of material fact as to whether CBS had a safety supervisor on the set of *Outsourced*, so as to give rise to a duty of care.

> e. *Rychlec's assertion that CBS provided construction employees to Producer also fails to raise a triable issue*.

Rychlec further contends that CBS contracted to provide laborers to work on Stage 10, and therefore CBS had a duty to ensure workplace safety. In support, Rychlec cites paragraph 9 of the contract, which states in its entirety: "Producer Control: The facilities provided to Producer for Producer's use pursuant to paragraph 4 above, shall at all times be under the direction and control of Producer. *All persons furnished by Studio to Producer in connection with Producer's use of the facilities* provided hereunder, including, without limitation, all so-called 'below the line' employees, shall be governed by the instructions and directions of Producer (all subject to the rules and regulations heretofore or hereafter established by Studio governing Producer's use of Studio's facilities and premises.)" (Italics added.)

However, this contract language did not require that CBS actually furnish employees to Producer. It merely addressed what would occur in the event CBS were to supply employees to Producer, namely, those employees would work under Producer's instructions and directions.

Moreover, there is no reliable evidence that CBS actually furnished employees to Producer on the set of *Outsourced*. Rychlec admitted in his deposition that he didn't know whether there were CBS people working on the construction crew.

Inconsistent therewith, more than six months after Rychlec's deposition, he executed a declaration in opposition to the motion for summary judgment, in which he stated that on any given day there were two to eight CBS gang grips working at Stage 10 on the production of *Outsourced*.

---

(*Lopez, supra*, 54 Cal.App.4th at p. 1124, italics added.) Therefore, these declarations failed to raise a triable issue with respect to the presence of a CBS safety supervisor on the job site.

10

It is settled that the court may disregard a declaration prepared for purposes of a summary judgment motion which conflicts with previous deposition testimony of the declarant. (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 21; *Jacobs v. Fire Ins. Exchange* (1995) 36 Cal.App.4th 1258, 1270.) Therefore, Rychlec's opposing declaration failed to raise a triable issue with respect to the presence of CBS employees on the set of *Outsourced*.

f. *No triable issue with respect to a purported Cal-OSHA violation.*

Rychlec contends CBS had a statutory duty (Lab. Code, § 6300 et seq.) to provide a safe workplace for Producer's employees, and that he was injured as a result of CBS's violation of a Cal-OSHA safety order which requires piles of lumber to be secured "so that the stack is stable against falling or collapsing." (Cal. Code Regs., tit. 8, § 1549(c).) The argument is unavailing.

Rychlec's complaint solely pled causes of action against CBS for general negligence and premises liability. Thereafter, in opposition to CBS's motion for summary judgment, Rychlec raised the issue of negligence per se. At that juncture, Rychlec argued that CBS breached its statutory obligation to provide a safe workplace by violating a Cal-OSHA safety order which requires piles of lumber to be properly secured. (Cal. Code Regs., tit. 8, § 1549(c).) Similarly, on appeal, plaintiff contends that an injured worker can predicate a tort cause of action on a violation of Cal-OSHA safety standards. However, this theory of liability was not alleged in the complaint.

It is settled that the "complaint limits the issues to be addressed at the motion for summary judgment. The rationale is clear: It is the allegations in the complaint to which the summary judgment motion must respond. [Citation.] Upon a motion for summary judgment, amendments to the pleadings are readily allowed. [Citation.] If plaintiff wishes to expand the issues presented, it is incumbent on plaintiff to seek leave to amend the complaint either prior to the hearing on the motion for summary judgment, or at the hearing itself. [Citation.] To allow a party to expand its pleadings by way of opposition papers creates, as it would here, an unwieldy process." (*Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1258.) Permitting "an issue that has not been pled to be

11

raised in opposition to a motion for summary judgment in the absence of an amended pleading, allows nothing more than a moving target.  For Code of Civil Procedure section 437c to have procedural viability, the parties must be acting on a known or set stage."  (*Id*. at pp. 1258-1259, fn. 7.)

The doctrine of negligence per se is not a separate cause of action; rather, it creates an evidentiary presumption that affects the standard of care in a cause of action for negligence.  (*Millard v. Biosources, Inc*. (2007) 156 Cal.App.4th 1338, 1353, fn. 2 (*Millard*).)  Nonetheless, to state a cause of action for negligence under the theory of negligence per se, a plaintiff must plead four elements: (1) the defendant violated a statute or regulation, (2) the violation caused the plaintiff's injury, (3) the injury resulted from the kind of occurrence the statute or regulation was designed to prevent, and (4) the plaintiff was a member of the class of persons the statute or regulation was intended to protect.  (Evid. Code, § 669; *Alejo v. City of Alhambra* (1999) 75 Cal.App.4th 1180, 1184-1185; *Quiroz v. Seventh Ave. Center* (2006) 140 Cal.App.4th 1256, 1285; CACI No. 418.)

This case is analogous to *Millard*, *supra*, 156 Cal.App.4th 1338.  There, a plaintiff who suffered a workplace injury did not allege in his complaint that the doctrine of negligence per se applied to the facts of his case.  (*Id*. at p. 1353.)  The reviewing court addressed the effect of plaintiff's failure to plead a theory of negligence per se, stating:  " 'The burden of a defendant moving for summary judgment only requires that he or she negate plaintiff's theories of liability *as alleged in the complaint*. . . . " ' . . . *The* [*papers*] *filed in response to a defendant's motion for summary judgment may not create issues outside the pleadings and are not a substitute for an amendment to the pleadings*.' " '  (*Tsemetzin v. Coast Federal Savings & Loan Assn*. (1997) 57 Cal.App.4th 1334, 1342.)  Because Millard failed to allege that he was entitled to rely on a presumption of negligence under a theory of negligence per se and did not ask permission to amend his complaint to do so in response to Biosources's motion for summary judgment (see *Honig v. Financial Corp. of America* (1992) 6 Cal.App.4th 960, 965), amended [Labor Code] section 6304.5 has no application here and the [trial] court properly granted Biosources's

12

motion for summary judgment." (*Millard, supra*, 156 Cal.App.4th at p. 1353, certain italics added.)

Thus, Rychlec cannot interject the unpled issue of a regulatory violation (Cal. Code Regs., tit. 8, § 1549(c)) in order to withstand summary judgment. Because this theory of liability is outside the scope of the pleadings, Rychlec is incapable of raising a triable issue in this regard.[4]

g. *Conclusion as to duty*.

For the reasons set forth above, the trial court properly granted summary judgment in favor of CBS on the ground no duty was owed.

3. *Evidentiary issues*.

Rychlec contends the trial court erroneously overruled his evidentiary objections to certain paragraphs in the declarations of Babu Subramanian, Jimmy Simons and Michael Skinner.

Rychlec unsuccessfully objected to the following assertions in the above declarations: safety on the set of *Outsourced* was the sole responsibility of Producer's personnel; CBS was not responsible for safety on the set, as Producer had direction and control of Stage 10 at all times during the production of *Outsourced*; Producer had exclusive working use of Stage 10; CBS accessed Stage 10 only to turn on and off the air conditioning and in response to emergencies. Rychlec's grounds for his objections were "inadmissible opinion and conclusion," and "vague and ambiguous" as to the meaning of the terms "exclusive working use" and "direction and control."

Having reviewed the declarations, we conclude the trial court acted within its discretion in overruling Rychlec's evidentiary objections. Skinner, a 32-year employee who was director of plant services for CBS, had a basis to opine that safety on the set of *Outsourced* was Producer's responsibility. Simons was unit production manager for Producer, whose responsibilities included monitoring safety on the set for the production crew; Simons was in a position to assert that Producer had exclusive working use of

---

[4] For the same reason, we reject Rychlec's contention that CBS failed to establish it complied with the terms of the contract or with industry standards.

Stage 10 and that safety on the set was Producer's sole responsibility. Similarly, Subramanian was a first assistant director on the production of *Outsourced* with responsibility for monitoring safety on the set; Subramanian had a basis to aver that safety on the set was solely Producer's responsibility.

Moreover, the resolution of the duty question does not turn on the contents of these declarations. The licensing agreement speaks for itself. As set forth above, CBS licensed sound stages 10 and 12 for Producer's "exclusive use" during the term of the agreement, i.e., for the production of 12 episodes of *Outsourced*. The facilities provided for Producer's use were "at all times . . . under the direction and control of Producer." Further, except for emergencies, CBS was barred from entering "the portions of the premises that are for Producer's exclusive use" without prior notice. Accordingly, it is the language of the licensing agreement, rather than the above declarations, which is dispositive.

4. *No issue as to Workers' Compensation.*

In moving for summary judgment, CBS asserted, inter alia, Rychlec's action was barred by the exclusive remedy of the Workers' Compensation Act. The trial court ruled "this argument does not apply as Defendant CBS was not the employer, nor is it alleged that Plaintiff was the employee of CBS."

On appeal, Rychlec contends that because CBS was not his employer, his civil action against CBS is not barred by Workers' Compensation. The trial court agreed with Rychlec that his action against CBS is not barred by the Workers' Compensation Act, and CBS has not pursued the issue on appeal. Although Rychlec's action against CBS is not barred by the Workers' Compensation Act, it is barred for the other reasons discussed above.

14

**DISPOSITION**

The judgment is affirmed.  Defendants are awarded their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

KITCHING, J.

ALDRICH, J.

15