[No. B095244. Second Dist., Div. Seven. May 14, 1996.]

FRANCES LOPEZ, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
FRIEDMAN BROTHERS INVESTMENT COMPANY, Real Party in
Interest.

**COUNSEL**

Manuel H. Miller for Petitioner.

No appearance for Respondent.

Nouskajian & Cranert and Terrence L. Cranert for Real Party in Interest.

## Opinion

**LILLIE, P. J.**—We treat this appeal by Frances Lopez from a minute order granting summary judgment on her complaint in favor of defendant Friedman Brothers Investment Company (Friedman) as a petition for writ of mandate.[1] The primary issue before us is whether Friedman, the owner and lessor of the commercial premises where Lopez allegedly fell, established it was entitled to judgment as a matter of law.

### Factual and Procedural Background

Lopez and Friedman agree that the following facts are undisputed. Friedman owned about 25 acres of farmland upon which stood a produce stand, Hubbard Farms, operated by Sam and Pina Scattaglia under a lease executed in 1977. The term of the lease was for one year, but the lease was renewed on an annual basis thereafter, up to and including the time of Lopez's slip and fall in 1991. Pursuant to the terms of the lease, the Scattaglias were entitled to farm the land and sell the harvested produce at the stand; the lease permitted the lessees, at their expense, to erect a small building for selling the produce, which improvement was to become part of the realty and belong to the lessor. The lease also provided that the lessor "shall have the absolute right to enter upon the premises at any time for the purpose of inspecting the same, or for the purpose of posting Notices of Non-Liability, or for any other reasonable purpose."

At least 10 years prior to Lopez's accident in May 1991, the Scattaglias erected a small market, which had a concrete floor. Although the Scattaglias were in possession of the premises on the day of the accident, they had in the prior 10 years subleased the market to Albert Dibb, Jr., for a 5-year period and had then subleased the market to a Korean couple for about a year; at the

---

[1]Although our record contains only a June 5, 1995, minute order granting summary judgment, Lopez's notice of appeal refers to a June 22, 1995, summary judgment. Our record contains a cross-complaint for indemnity and declaratory relief by Friedman against Sam Scattaglia, doing business as Hubbard Farms; Scattaglia was also sued by Lopez as a Doe defendant; both the main action and Friedman's cross-complaint appear to be pending as to Scattaglia. Thus, the pendency of Friedman's cross-complaint prevents the entry of a final appealable judgment as to Friedman. (*Holt* v. *Booth* (1991) 1 Cal.App.4th 1074, 1081 [2 Cal.Rptr.2d 727].)

At time of oral argument, counsel for Lopez conceded that no summary judgment had been signed by the judge, however both parties have submitted the matter on the merits of the motion for summary judgment. Accordingly, in the interests of justice and judicial economy, we elect to exercise our discretion to treat the notice of appeal as a petition for writ of mandate. (See *Morehart* v. *County of Santa Barbara* (1994) 7 Cal.4th 725, 746 [29 Cal.Rptr.2d 804, 872 P.2d 143].) Inasmuch as the action appears to be proceeding as to a codefendant, it would best serve the interests of justice that the matter of the summary judgment in favor of Friedman be reviewed now to obviate possible multiple trials in this case.

time of plaintiff's accident, the Scattaglias had taken the premises back from the Korean couple and Albert Dibb was working at the store as the Scattaglias' employee.

Three to four times per week prior to her accident, Lopez was a regular shopper at Hubbard Farms; according to her husband, neither he nor his wife had ever slipped and fallen at Hubbard Farms; on May 23, 1991, Mr. Lopez waited in their truck while Mrs. Lopez entered the market and walked back to find some lettuce; finding no lettuce, she picked up a bag of tortillas, went to the register, and paid for her items; as she was in the doorway leaving Hubbard Farms, she stepped on some grapes on the floor and slipped and fell; Lopez did not see the grapes before stepping on them; after her fall, she saw that her shoe was wet from the grapes which were smashed on the floor; her husband saw five or six smashed grapes on the floor.

According to the declaration of Albert Friedman, a partner of Friedman, Friedman made no improvements to the property for purposes of operation of Hubbard Farms and was not involved in any way in the operation of Hubbard Farms, or in the installation of the cement floor at Hubbard Farms; other than Lopez's accident, he was not aware of any other personal injury accident occurring at Hubbard Farms.

According to the deposition testimony of a witness, Bonifacio Gutierrez, in 1991, before the accident, he observed the floor of Hubbard Farms to be wet because the refrigerator was leaking water, which ran from underneath the refrigerator downhill towards the front door of the store and the parking lot; every time he went to the store, he saw grapes on the floor, but he could not remember specifically whether he saw any grapes on the floor on the day of Lopez's accident.

In January 1992, Lopez filed her complaint for personal injuries and damages against Friedman and Hubbard Farms, asserting theories of negligence and premises liability; she alleges that defendants "failed to repair, examine, investigate, inspect, make safe, clean or otherwise maintain or cause to be maintained a certain business premises commonly known as Hubbard Farms"; that defendants "negligently managed, owned, controlled, and operated the subject business premises in that the floors of the subject premises were slippery and littered with produce, glass, and other materials, refuse and debris, which defendants knew, or in the exercise of reasonable care should have known, constituted a dangerous condition and unreasonable risk of harm of which plaintiff was at all times mentioned unaware"; and that defendants "negligently failed to take steps to either make the condition safe or warn plaintiff of the dangerous condition."

Friedman filed a motion for summary judgment, supported primarily by the declaration of Albert Friedman and excerpts of the depositions of Lopez and her husband. Friedman contended that as a lessor out of possession, it was entitled to summary judgment because there was no evidence that Friedman had actual notice of the dangerous condition of the floor, the alleged dangerous condition was not created by any employee of Friedman, and there was no evidence of any prior slip and fall. Further, Friedman contended that "plaintiff has no evidence to support her claim that the alleged grape on the ground was on the floor a sufficient amount of time to trigger defendant's constructive notice of the dangerous condition," and "there is no reasonable inspection that landowner Friedman, as a lessor out of possession and without control over the produce stand, could have performed which would have revealed this particular dangerous condition."

In opposition to the motion, Lopez contended that the cement floor of the market was improperly constructed and finished so that when it was covered with leaking water or fruit, it became unreasonably dangerous; Friedman's lease permitted it to enter the premises at any time for inspection, or for any reasonable purpose; all construction, including the market, required the prior written consent of the landlord; the lease for one year was subject to annual renewal, and was annually renewed through the time of the accident. Lopez contended triable issues of fact remained as to whether Friedman was negligent in failing to inspect, or to conduct a reasonable inspection, to discover the dangerous condition of the floor, and as to the foreseeability of injuries to customers of its tenant from such condition.

After hearing on the motion, the trial court granted the motion. The minute order states in pertinent part: "Moving party has shown that it is the lessor of commercial property . . . , that it did not conduct any operations on the property in question . . . , that plaintiff allegedly slipped on grapes . . . , and that plaintiff doesn't know how long the grapes had been there. This is sufficient to shift the burden to plaintiff to show that a factual issue exists. While plaintiff has contested some of the facts relied upon by moving party, there has been no showing that there is evidence to indicate that moving party had any actual or constructive notice of the condition that purportedly caused her accident. Rather, the gist of plaintiff's opposition is that a commercial lessor may be held liable for dangerous conditions on the premises and has a duty to inspect. The cases relied upon are inapplicable to this case, involving transient conditions as opposed to circumstances where the dangerous condition was of an unchanging and ongoing nature. There is no showing that any reasonable inspection required of a commercial lessor would have given notice of the condition complained of or that moving party in any way had actual notice." Lopez filed timely notice of appeal from "the

Summary Judgment filed on or about June 22, 1995." We address the merits of the arguments raised in the parties' briefs by deeming the appeal to be a petition for writ of mandate. (Fn. 1, *ante.*)

## I

### STANDARD OF REVIEW

"Summary judgment is granted when there is no triable issue as to any material fact and the moving party is entitled to judgment as a matter of law. (§ 437c, subd. (c).) We review the trial court's decision to grant [defendant] summary judgment de novo." (*Hunter* v. *Pacific Mechanical Corp.* (1995) 37 Cal.App.4th 1282, 1285 [44 Cal.Rptr.2d 335].) We are governed by the 1993 amendments to Code of Civil Procedure section 437c; Friedman's burden "could be met only by showing 'that one or more elements of the cause of action . . . *cannot be established*, or that there is a complete defense to that cause of action.' (§ 437c, subd. (o)(2).) Once the defendant has met that burden, the burden shifts to the plaintiff to show 'that a triable issue of one or more material facts exists as to that cause of action . . . .' " (37 Cal.App.4th at pp. 1285-1286, fn. omitted.)

As noted by the court in *Hunter* v. *Pacific Mechanical Corp., supra,* 37 Cal.App.4th 1282, the 1992 and 1993 amendments to Code of Civil Procedure section 437c were intended to apply a particular burden-shifting characteristic of the federal procedure to California summary judgment motions: " 'Now, a moving defendant may rely on factually devoid discovery responses to shift the burden of proof pursuant to section 437c, subdivision (o)(2). Once the burden shifts as a result of the factually devoid discovery responses, the plaintiff must set forth the specific facts which prove the existence of a triable issue of material fact.' " (37 Cal.App.4th at p. 1287.) Under federal law, "the moving party always bears the initial burden of establishing the absence of a genuine issue of material fact. [Citation.] However, if the nonmoving party bears the burden of proof on an issue at trial, the moving party *need not support its summary judgment motion with evidence negating an essential element of the nonmoving party's case* to satisfy its burden. [Citation.] The moving party may simply point to the *absence of evidence* to support the nonmoving party's case. (*Ibid.*) The nonmoving party must then 'set forth specific facts showing that there is a genuine issue for trial.' [Citation.] This can be accomplished by producing 'specific evidence, through affidavits or admissible discovery material, to show that the dispute exists.' " (37 Cal.App.4th at p. 1286, italics in original.)

There is no claim by Friedman in this case that the 1992 and 1993 amendments to Code of Civil Procedure section 437c were intended to

abrogate its burden on summary judgment to identify and respond to all theories of liability reflected in the complaint, "even if not separately pleaded." (§ 437c, subd. (o)(2).) ■ Thus, "[w]hile a plaintiff who has pleaded several causes of action based on the same set of facts need sustain its burden of proof only on one of the theories in order to prevail at trial, a defendant who seeks a summary judgment must define all of the theories alleged in the complaint and challenge each factually." (*Nazar* v. *Rodeffer* (1986) 184 Cal.App.3d 546, 551 [229 Cal.Rptr. 209], abrogated on another point in *Ornelas* v. *Randolph* (1993) 4 Cal.4th 1095, 1103 [17 Cal.Rptr.2d 594, 847 P.2d 560].) "Nothing in the language of the 1992 adoption of section 437c, subdivision (n)(2), amendments abrogates this well-established summary judgment requirement that the initial burden rests with the moving party." (*Villa* v. *McFerren* (1995) 35 Cal.App.4th 733, 744 [41 Cal.Rptr.2d 719].) "[A]ll the 1993 amendments did in terms of the burden of proof of a moving defendant was move the language in section 437c, subdivision (n)(2) to subdivision (o)(2). No substantive change in the language occurred in the 1992 and 1993 amendments in terms of a moving defendant's burden of proof." (*Id.* at p. 746.)

We apply the foregoing principles to the theories of liability asserted against Friedman as the owner and landlord of the premises involving the alleged accident.

## II

### FRIEDMAN'S LIABILITY AS LANDOWNER

■ In premises liability cases, summary judgment properly may be granted where a defendant unequivocally establishes its lack of ownership, possession, or control of property alleged to be in a dangerous or defective condition. (*Gray* v. *America West Airlines, Inc.* (1989) 209 Cal.App.3d 76, 81 [256 Cal.Rptr. 877].) In the instant case, there is no dispute that Friedman is the owner of the premises leased to Scattaglia. Thus, to the extent the trial court may have concluded that Friedman had no duty to exercise due care to protect third persons, such as Lopez, who came onto the leased premises, the trial court erred. (*Krongos* v. *Pacific Gas & Electric Co.* (1992) 7 Cal.App.4th 387, 392 [9 Cal.Rptr.2d 124].)

*Portillo* v. *Aiassa* (1994) 27 Cal.App.4th 1128 [32 Cal.Rptr.2d 755], contains a good discussion of the duties owed by a commercial landlord. ■ "A landlord owes a duty of care to a tenant to provide and maintain safe conditions on the leased premises. [Citation.] This duty of care also extends to the general public. 'A lessor who leases property for a purpose

involving the admission of the public is under a duty to see that it is safe for the purposes intended, and to exercise reasonable care to inspect and repair the premises before possession is transferred so as to prevent any unreasonable risk of harm to the public who may enter. [Citations.] An agreement to renew a lease or relet the premises . . . cannot relieve the lessor of his duty to see that the premises are reasonably safe at that time.' [Citation.] [¶] Where there is a duty to exercise reasonable care in the inspection of premises for dangerous conditions, the lack of awareness of the dangerous condition does not generally preclude liability. [Citation.] 'Although liability might easily be found where the landowner has actual knowledge of the dangerous condition "[t]he landowner's lack of knowledge of the dangerous condition is not a defense. He has an *affirmative duty* to exercise ordinary care to keep the premises in a reasonably safe condition, and therefore must *inspect* them or take other proper means to ascertain their condition. And if, by the exercise of reasonable care, he would have discovered the dangerous condition, he is liable." ' [Citation.]" (27 Cal.App.4th at p. 1134, italics in original.)

■ Thus, a commercial landowner "cannot totally abrogate its landowner responsibilities merely by signing a lease. As the owner of property, a lessor out of possession must exercise due care and must act reasonably toward the tenant as well as to unknown third persons. [Citations.] At the time the lease is executed and upon renewal a landlord has a right to reenter the property, has control of the property, and must inspect the premises to make the premises reasonably safe from dangerous conditions. [Citations.] Even if the commercial landlord executes a contract which requires the tenant to maintain the property in a certain condition, the landlord is obligated at the time the lease is executed to take reasonable precautions to avoid unnecessary danger." (*Mora* v. *Baker Commodities, Inc.* (1989) 210 Cal.App.3d 771, 781 [258 Cal.Rptr. 669].) "However, the landlord's responsibility to inspect is limited. Like a residential landlord, the duty to inspect charges the lessor 'only with those matters which would have been disclosed by a reasonable inspection.' [Citations.] The burden of reducing or avoiding the risk and the likelihood of injury will affect the determination of what constitutes a reasonable inspection." (*Id.* at p. 782.)

■ It is apparent from the allegations of paragraph 24 of the premises liability cause of action of the complaint, as well as Lopez's opposition to the summary judgment motion (see, e.g., *Pultz* v. *Holgerson* (1986) 184 Cal.App.3d 1110, 1114-1117 [229 Cal.Rptr. 531]), that one theory of liability asserted by Lopez is that the floor of the market was inherently defective and dangerous because it was "improperly 'finished' " and became slippery when littered with produce, and that Friedman knew, or should have known,

that the combination of produce litter with the type of cement floor "constituted a dangerous condition and unreasonable risk of harm of which plaintiff was at all times mentioned unaware." Lopez presented evidence from which it reasonably can be inferred that it was common for the floor of the market to be littered with grapes. Thus, it is clear that Lopez is asserting liability based upon a condition which was not "transient." Rather, given the ongoing use of the market to sell grapes and the allegedly defective finish of the floor, the dangerous condition was allegedly recurring or continuous. Thus, both Friedman and the trial court erroneously assumed that the only defective condition at issue in this case was the "transient" existence on the floor of the particular grapes involved in Lopez's slip and fall. The trial court's minute order thus erroneously characterizes the dangerous condition in this case as "transient" and as involving only the presence of the grapes on the floor at the time of Lopez's fall.

■■■ Friedman's motion failed to address the theory of liability based on the claims that the floor was improperly finished and defective when littered with produce; that it was common for produce to be on the floor; that such a floor posed an unreasonable danger to customers; and the condition existed for a sufficient amount of time to be revealed by a reasonable inspection by the landlord. Friedman thus failed to present evidence addressed to the issues of whether it had actual knowledge of the type and condition of the floor in the market, or whether it can reasonably be charged with such knowledge due to its right to inspect the premises under the lease.

Moreover, without a further description of the nature of the cement floor where Lopez slipped, it cannot be determined whether or not the floor presented an obvious danger, or whether it posed a hidden or latent danger when littered with grapes. For example, we do not know the color of the grapes or the floor. Whether obvious or not, if Friedman had actual knowledge, or can reasonably be charged with knowledge due to its right to inspect the premises, that the floor in the market was dangerous when littered with produce, which was a common condition, then Friedman would have a duty to use due care to protect people coming onto its land from the danger. (See *Krongos* v. *Pacific Gas & Electric Co.*, *supra*, 7 Cal.App.4th at p. 395.)
■■■ "Generally, if a danger is so obvious that a person could reasonably be expected to see it, the condition itself serves as a warning, and the landowner is under no further duty to remedy or warn of the condition. [Citation.] However, this is not true in all cases. '[I]t is foreseeable that even an obvious danger may cause injury, if the practical necessity of encountering the danger, when weighed against the apparent risk involved, is such that under the circumstances, a person might choose to encounter the danger. . . .' "

(*Id.* at p. 393.) ■■■ In this case, Friedman has not provided sufficient information about the nature and condition of the floor or the nature or scope of any of its inspections of the premises, for us to determine with any particularity what conduct or inspection by Friedman would have been sufficient to discharge its duty to Lopez. Thus, Friedman's motion did not establish that it had discharged its duty to Lopez.

As the party moving for summary judgment, Friedman had the burden to show that it was entitled to judgment with respect to all theories of liability asserted by Lopez. As in *Mora* v. *Baker Commodities, Inc., supra,* Friedman's showing was insufficient to meet its burden as it did not show that at the time the lease was executed and renewed there was an inspection, nor "were facts presented bearing upon the necessity for an inspection, nor facts which showed that any inspection conducted was reasonable under the circumstances. Respondent's failure to provide these facts indicates that granting the summary judgment motion as to the negligence cause of action was inappropriate." (210 Cal.App.3d at p. 782, fn. omitted.)

Because Friedman's summary judgment motion did not address the primary theory of premises liability asserted by Lopez, we find inapposite those cases cited by Friedman, including *Union Bank* v. *Superior Court* (1995) 31 Cal.App.4th 573 [37 Cal.Rptr.2d 653], and *Hunter* v. *Pacific Mechanical Corp., supra,* 37 Cal.App.4th 1282, where defendants were able to prevail on summary judgment motions by showing respectively, with plaintiff's factually vague interrogatory responses (*Union Bank*) and deposition testimony (*Hunter*), that the plaintiff could not establish a necessary element of his cause of action. In the instant case, Friedman fails properly to define and address all theories of liability, and its separate statement of disputed facts fails to deal with the issue of the allegedly defective floor of the market and the issue of how rare or common an occurrence it was for grapes or produce to be on the floor of the market. Thus, as Friedman failed to meet its initial burden on summary judgment, the *Union Bank* line of cases is inapplicable.

We conclude that on the instant record the trial court erred in granting the motion for summary judgment.

### DISPOSITION

Let a peremptory writ of mandate issue directing the superior court to vacate its order granting summary judgment and to enter a new order

denying Friedman's motion for summary judgment. The parties are to bear their own costs in this proceeding.

Johnson, J., and Woods (Fred), J., concurred.