Roy Paulino CAMACHO,
Plaintiff–Appellant,

v.

DU SUNG CORPORATION, dba 007 Gun Club; Carl Rose Incorporated, dba Carl Rose Tumon Plaza; Carlos S. Takano; Rosemarie Takano; Yasuda Fire And Marine Insurance Company, a Guam Corporation; Hyeong Won Cho, Defendants–Appellees.

No. 96–15600.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 8, 1997.

Decided Aug. 5, 1997.

Randall L.K.M. Rosenberg, Garcia Garcia & Rosenberg, Honolulu, HI, for plaintiff-appellant.

John A. Spade and Randall Todd Thompson, Mair, Mair, Spade & Thompson, Agana, Guam, for defendants-appellees.

Before: NORRIS, HALL and TASHIMA, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

This case concerns the liability of a landlord under Guam law for injuries to a third party caused by a tenant's activities. Because we find no legal basis on the facts presented for holding the landlord liable, we affirm the grant of summary judgment in favor of defendants Carlos and Rosemarie Takano.

## I. Background

The Takanos, the owners of a commercial building in Guam, leased space to the Du Sung Corporation for use as a shooting gallery (known as the 007 Gun Club). The Takanos did not investigate Jin Kon Kim, the owner of the gun club, or inquire about his experience or training with firearms. They did confirm, however, that he had obtained the proper license from the Guam government. The lease required the tenant to maintain the premises and to keep the shooting gallery noise-free and safe. It did not give the landlords the right to enter, inspect, maintain or repair the premises, although they could terminate the lease and repossess the property in the event of a breach.

The gun club itself was divided into two sections: a reinforced rear area where shooting occurred and an unreinforced front part that adjoined the common areas of the building. The wall between the front part of the gun club and the common area contained an unreinforced glass window. Loaded guns were kept in a display case in the front section, although the Takanos were unaware that these guns were loaded. Although the Takanos had the right under the lease to approve the plans for the gun club, they did not exercise it.

Plaintiff Roy Paulino Camacho came to the gun club on Feb. 9, 1992, to speak with Kim about business opportunities unrelated to the club. After he left the club and was walking in the adjacent hallway, Hyeong Won Cho, a friend of Kim, picked up a loaded gun from the display case. The gun discharged accidentally, and the bullet went through the window into the common hallway. It hit Camacho and caused serious injuries.

Camacho sued several defendants, including Cho, the gun club, the Takanos, and their insurer, in the Superior Court of Guam. The Takanos and their insurer moved for summary judgment, which the superior court granted. Camacho obtained a Guam R. Civ. P. 54(b) certification and then appealed to the Appellate Division of the District Court of Guam pursuant to 48 U.S.C. § 1424–3(a). The district court affirmed, and Camacho timely appealed to this court. We have jurisdiction under 48 U.S.C. § 1424–3(c) and (d).

## II. Discussion

### A. Standard of Review

We review the decision of the Guam Superior Court as if it had not been

previously heard by an appellate court. *Cristobal v. Siegel,* 26 F.3d 1488, 1491 (9th Cir.1994). We review de novo a grant of summary judgment. *Bagdadi v. Nazar,* 84 F.3d 1194, 1197 (9th Cir.1996). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the superior court correctly applied the substantive law. *Id.* Although summary judgment in a negligence action is generally disfavored, it is proper where the facts are essentially undisputed and only issues of law remain. *See Flying Diamond Corp. v. Pennaluna & Co.,* 586 F.2d 707, 713 (9th Cir.1978). We do not defer to the interpretation of Guam law by the appellate division of the district court. *Guam v. Yang,* 850 F.2d 507, 514 (9th Cir. 1988) (en banc).

**B. Liability under Guam law**

■ Camacho argues that the Takanos negligently failed to inspect the premises and to take reasonable precautions to protect him from injuries caused by activities in the shooting range. As no Guam cases directly address this situation, we turn first to Guam's general negligence statute, 18 Guam Code Ann. § 90107. It provides, "Everyone is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by want of ordinary care or skill in the management of his property or person, except so far as the latter has willfully brought the injury upon himself." Because this provision was adopted from California Civil Code § 1714, this court and the Guam courts consider California negligence cases to be persuasive authority. *See Roberto v. Aguon,* 519 F.2d 754, 755 (9th Cir.1975).

■ Although the traditional rule has been that a landlord is not liable to third parties for injuries caused by conditions of or activities on the leased premises, *see* 4 Witkin, *Summary of California Law, Real Property* § 595 (9th ed.1987), California courts have begun to impose greater duties on the landlord, at least where the premises are leased for a purpose involving admission of the public. In doing so, they have applied the general multifactor test for the existence of a

duty from *Rowland v. Christian,* 69 Cal.2d 108, 70 Cal.Rptr. 97, 100, 443 P.2d 561 (1968). *See Portillo v. Aiassa,* 27 Cal.App.4th 1128, 32 Cal.Rptr.2d 755, 758 (1994); *Christensen v. Superior Court,* 54 Cal.3d 868, 2 Cal. Rptr.2d 79, 88, 820 P.2d 181 (1991). The *Rowland/Christensen* test examines the following factors: (1) the foreseeability of harm to the plaintiff; (2) the degree of certainty that the plaintiff suffered injury; (3) the closeness of the connection between the defendant's conduct and the injury suffered; (4) the moral blame attached to the defendant's conduct; (5) the policy of preventing future harm; (6) the extent of the burden to the defendant and the consequences to the community of imposing a duty; and (7) the availability, cost, and prevalence of insurance for the risk involved. 70 Cal.Rptr. at 100, 443 P.2d 561.

■ By using this test, recent cases have arrived at a standard that commercial landowners, even when out of possession, must act reasonably toward the tenant and unknown third persons. As part of this duty, the landlord generally has a responsibility to inspect the premises and ensure that they are safe for the purposes intended. *See Portillo,* 32 Cal.Rptr. at 758. Where, as here, the landlord executes a contract requiring the tenant to maintain the property in a certain condition, the duties are more limited: the landlord must, at the time the lease is executed, take reasonable precautions to avoid unnecessary danger. *See Lopez v. Superior Court,* 45 Cal.App.4th 705, 52 Cal. Rptr.2d 821, 827 (1996) (quoting *Mora v. Baker Commodities, Inc.,* 210 Cal.App.3d 771, 258 Cal.Rptr. 669, 675 (1989)).

■ The evolving application of the *Rowland/Christensen* factors in the *Portillo* and *Lopez* line of cases has led to a sensible standard, but we do not think it warrants imposing liability on the landlords in this case. Under *Lopez,* the Takanos owed a duty *at the time the lease was executed* to take reasonable precautions. This accident, however, was caused by a dangerous instrument—loaded guns—brought onto the premises by the tenant after the tenant took possession. Moreover, even under the broader *Rowland* test, we do not believe that the

landlords would foresee this type of injury or that the injury was closely enough connected to the landlords' conduct. The tenant kept the loaded guns in a display case separate from the reinforced part of the shooting gallery where the guns were supposed to be fired. The landlord had no reason to foresee that *loaded* guns would be kept outside of the secure area. It may be true, as Camacho argues, that as a matter of standard firearms safety practice, one should generally treat guns as though they are loaded. It is quite apparent, however, from the deposition of Francisco Tenorio, Camacho's firearms safety expert, that industry practice is not to keep stored guns loaded and certainly not to do so in an unsecure area open to members of the public. The landlords cannot be expected to have foreseen that the gun club would fail to observe normal safety standards in this manner.

Furthermore, although *Lopez* and *Portillo* impose a duty to inspect, the lease required the tenant to maintain the property, and the duty would therefore be limited to inspection for conditions existing at the time of transfer of possession. *See Lopez*, 52 Cal.Rptr.2d at 827. Since the guns were not present at that time, the landlords did not have a duty to discover where they were kept, let alone to discover whether they were stored loaded. But even if their duty extended beyond the time of transfer, we do not believe the danger would have been discovered by a reasonable inspection. Of course, even a cursory inspection would have found that guns were kept in the display case. But it would not have been immediately apparent that the guns were loaded unless the Takanos actually examined the guns themselves. We decline to extend the duty to inspect this far.

■ A better question may be whether the landlords acted reasonably by not replacing the glass wall in the front part of the shooting gallery, which existed at the time they transferred possession. Camacho argues that the glass window in the front of the shooting gallery was a dangerous condition in light of the intended purposes of the premises. To be sure, it would have been safer to replace the window or cover it with a metal shutter that would block a bullet. Neverthe-

less, we do not believe the Takanos, as opposed to the tenant, had a duty to do so. The glass wall was in the part of the premises used for display; the area in the back where customers shot the firearms was properly reinforced and was suitable for use as a shooting gallery. Had the tenant followed appropriate safety procedures and not kept the guns loaded in the unreinforced section of the club, the injury would not have occurred, despite the presence of the glass window. Under these circumstances, we do not think the landlords were required to reinforce the glass wall, especially since the tenant expressly took on the responsibility to keep the gun club in safe condition.

Camacho raises several other theories for imposing liability, but we find them unpersuasive. The so-called "shooting gallery" cases involving concessions at public fairs are not apposite, as they rest on particular duties owed by fair proprietors to members of the public they have affirmatively invited onto the premises. *See Basye v. Craft's Golden State Shows*, 43 Cal.App.2d 782, 111 P.2d 746, 751 (1941); *Silverman v. Usen*, 128 Me. 349, 147 A. 421, 422 (1929). These cases therefore provide no additional basis for holding the Takanos liable. Camacho's claim that the Takanos negligently leased the premises to Kim was not raised below, and in any event, we are unwilling to create a tort of negligently leasing under Guam law when most states have rejected this theory of liability. *See, e.g., Mitchell by Mitchell v. Bazzle*, 304 S.C. 402, 404 S.E.2d 910, 912 (1991).

The decision of the appellate division of the district court is AFFIRMED.