Filed 10/16/15  Rabbani v. Trader Joe's CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| MALIHE RABBANI, | B256819 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. LC098579) |
| v. | |
| TRADER JOE'S COMPANY, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Amy D. Hogue, Judge.  Affirmed.

Carpenter, Zuckerman & Rowley, John C. Carpenter and Paul S. Zuckerman for Plaintiff and Appellant.

McCune & Harber, Stephen M. Harber, Heather M. Bean for Defendant and Respondent.

Plaintiff and appellant Malihe Rabbani (Plaintiff) slipped and fell after stepping in a puddle of soup on the floor at one of defendant and respondent Trader Joe's Company (Trader Joe's) stores. Plaintiff filed suit, asserting causes of action for negligence and premises liability. The trial court granted summary judgment, concluding Trader Joe's had neither actual nor constructive notice of the spilled soup because, two to three minutes before the accident, a store employee had inspected the area and saw nothing on the floor. We consider whether Plaintiff has a viable argument that summary judgment should have been denied, including her contention that it was Trader Joe's floor itself, not the soup spill, that was the dangerous condition that caused her injuries.

## BACKGROUND

On March 1, 2011, Plaintiff and her son went shopping at a Trader Joe's store in Woodland Hills, California (the Store). The Store was distributing free samples of soup that day. While in the dairy section, which is adjacent to where the samples were being distributed, Plaintiff slipped and fell on soup that had spilled on the floor, injuring herself.

### Plaintiff's Complaint

Plaintiff sued, and her First Amended Complaint alleged claims for negligence and premises liability. She alleged that she "sustained injuries when she slipped and fell as a result of dangerous conditions on [Trader Joe's] property," and that "[s]aid dangerous conditions include, but are not limited to, a foreign substance on [Trader Joe's] floor on which [P]laintiff slipped and the flooring on [Trader Joe's] premises on which [P]laintiff slipped." She further alleged "said hazardous, dangerous conditions were caused by [Trader Joe's] . . . and/or existed for a sufficient time prior to the incident for [Trader Joe's] to have corrected, removed, and/or warned [P]laintiff of the existence of said conditions."

### Trader Joe's Motion for Summary Judgment

Trader Joe's moved for summary judgment, contending it had no actual or constructive notice of the spilled soup and therefore that it had not negligently caused

2

Plaintiff's injuries. Trader Joe's argued that it had a reasonable inspection system in place to ensure that spills were cleaned up promptly, and that there was no evidence that the soup had been on the floor more than two or three minutes.

Specifically, Trader Joe's separate statement of undisputed material facts cited evidence establishing Store employees were constantly on the lookout for spills at the time of the incident and would clean the floors as needed. Trader Joe's also designated its employees to serve in shifts as a "helmsperson" specifically assigned to look for and clean spills from the floor. Most relevant, Trader Joe's asserted it was undisputed that two to three minutes before Plaintiff fell, the area where she was walking was clean, dry, and debris free. To establish that fact, Trader Joe's relied on the deposition testimony of its employee Brice Potthoff. He testified that he had inspected the area where Plaintiff fell just two to three minutes before the accident and saw no soup on the floor. Potthoff also testified that he observed the floor after Plaintiff fell and saw a yellowish-greenish substance on the floor that he believed was soup, covering an area of about three square inches.[1] He did not observe any marks on the soup that would be made by a shopping cart, or any footprints near the soup.

In addition, Trader Joe's separate statement highlighted evidence to show the Store did not have recurring slip and fall problems. According to Potthoff, the flooring in the Store had remained the same since he began working there and Plaintiff was the only person he was aware of who had slipped and fallen during his time at the Store. Trader Joe's also cited deposition testimony of three non-party witnesses, including Plaintiff's son. All confirmed that they had no difficulty walking on the floor, and had not lost their footing or slipped, on the day of the incident or on the various occasions they had been present in the store in the past. One of the three witnesses testified that she shopped at the Store at least twice a week and had never seen any liquid or debris on the floor.

---

[1] Another witness described the soup as a "clear broth-like" soup. Whether the soup was clear or yellowish-green did not materially impact the trial court's grant of summary judgment nor does it affect our disposition of the appeal.

**Plaintiff's Opposition**

Plaintiff opposed the motion, asserting that issues of fact existed as to whether (1) Trader Joe's had constructive or actual notice of the spilled soup, (2) Trader Joe's used inherently slippery flooring in its store, and (3) Trader Joe's was negligent in handing out soup samples.

Regarding notice of the spill, Plaintiff asserted there was a dispute of material fact as to whether the soup was on the floor for more than three minutes because Plaintiff's son saw footprints around the spill when he arrived at the scene after the accident. Plaintiff argued that was evidence the spill existed long enough to have been discovered. Plaintiff also argued that Trader Joe's had not satisfied its burden to show the absence of an issue of fact as to actual notice; Plaintiff contended that Potthoff's testimony was inadequate because "Potthoff does not purport to know every employee's knowledge of the condition of the floor."

Plaintiff further argued that her complaint presented two other theories of liability that Trader Joe's had not negated even if it had shown it did not have notice of the spilled soup. Relying on this court's decision in *Lopez v. Superior Court* (1996) 45 Cal.App.4th 705 (*Lopez*), Plaintiff argued an issue of material fact existed as to whether Trader Joe's breached its duty to her by maintaining an inherently slippery floor. She also cited authority holding that a premises owner who creates a dangerous condition cannot contend he or she lacked notice of the condition. Plaintiff argued Trader Joe's created the unsafe condition by distributing soup samples in cups without lids and by failing to limit the area of the store in which samples could be consumed.

As evidence in support of these two theories, Plaintiff principally relied on the expert declaration of Brad Avrit, a civil engineer and president of WEXCO International, a construction consulting, engineering, and safety firm. Avrit had expertise in pedestrian locomotion and gait mechanics, as well as the English XL Variable Incidence Tribometer, a device used to measure and interpret the slip resistance of walking surfaces. Avrit did not personally inspect the Trader Joe's store, but Mark Burns, a civil engineer and a

4

senior forensic engineer at WEXCO, submitted a declaration stating that he inspected the Trader Joe's store on August 9, 2013, and measured the slip resistance of the floor where the accident occurred at .59 to .63 when dry, at .12 to .15 when wet, and at .02 to .05 when soup was present.

Based on Avrit's stated "understanding" that the floor surface at the time of Burns's inspection was substantially similar to the condition of the floor on the date of the incident, Avrit opined the floor was unsafe because the hard, smooth linoleum floor surface is slippery when wet. His declaration referenced and attached two pages of a study prepared by J.M. Burnfield and C.M. Powers that states there is a greater than 80 percent chance of a slip event occurring on a floor with a slip resistance of .15 or below, which in Avrit's view was an unreasonably high risk.

Avrit also set forth his views on how foreseeable it was that liquids would frequently be present on the Store floor. He stated: "Given the environment within any retail store, it is foreseeable that liquids would frequently be present on the floor surface, particularly in areas adjacent to refrigeration units where the incident occurred. The various sources of liquid at the subject Trader Joe's are numerous and include: (1) water leaking from the refrigeration units, (2) employees dropping merchandise while stocking, and (3) customers spilling liquids. The risk of substances being spilled onto the floor by customers is exponentially increased in the subject area of the Trader Joe's as it is within 35 feet of the stand where soup samples were being distributed to customers in small cups without lids." Avrit concluded that "the floor in and of itself is unreasonably dangerous" and below the standard of care. He further opined that the unsafe condition could have been avoided by installing a slip resistant floor, which he asserted was comparably priced to the existing floor, or a slip resistant treatment to the floor's surface.[2]

---

[2] Trader Joe's objected to these statements in the declaration for lack of foundation, for lack of personal knowledge, and because the matters stated were not sufficiently beyond the experience of an ordinary witness, among other reasons.

**Trader Joe's Reply and the Trial Court's Decision**

In reply, Trader Joe's contended there was no competent and admissible evidence the floor was inherently slippery, distinguishing *Lopez* because the spilled soup was a transient condition, not one that was recurring or continuous. Trader Joe's further argued that its practice of handing out soup samples did not create a dangerous condition, pointing to the absence of any evidence that a Trader Joe's employee spilled the soup in question. And Trader Joe's reprised its prior argument that actual or constructive notice was indispensible to prove liability.

After taking the matter under submission, the trial court granted Trader Joe's motion. The court found the only "real evidence" is that the soup was on the floor two to three minutes before Plaintiff fell. The trial court explained that Plaintiff's evidence did not support an inference to the contrary and the court therefore concluded Plaintiff could not show that Trader Joe's had notice of the dangerous condition yet failed to take action. The court found the Avrit and Burns declarations did not provide any evidence of how long the soup was on the floor; rather, they established only that the floor was slippery because it had soup on it, a fact not relevant to the question of Trader Joe's notice. With respect to Plaintiff's contention that the floor was inherently slippery and dangerous, the court observed that testimony cited by Trader Joe's from Potthoff and the non-party witnesses undercut Plaintiff's theory and tended to establish the floor was not inherently slippery. In any event, the trial court observed that accepting Plaintiff's theory would amount to imposing strict liability based on the type of floor, which the trial court found was not the law.

The trial court also sustained many of Trader Joe's evidentiary objections to Avrit's declaration. The court stated its rulings on an objection-by-objection basis at the conclusion of its written decision without explanation. In the body of its decision and during the summary judgment hearing, however, the court explained the basis for its position on many of the evidentiary issues. Most relevant here, the trial court referenced Avrit's stated opinion that it was foreseeable that liquids would frequently be present on

6

the floor at the Store (and that it would have been below the standard of care for Trader Joe's to use the subject flooring) and stated: "Expert opinion resting solely on speculation and surmise is inadequate to survive summary judgment because it fails to establish a 'reasonably probable causal connection' between [Trader Joe's] negligence and the Plaintiff's injury."[3] Although the trial court sustained many of the evidentiary objections, it explained that Trader Joe's met its burden on summary judgment "[r]egardless of the court's evidentiary rulings."

## DISCUSSION

Plaintiff continues to press the contention that there was a triable issue of fact as to whether Trader Joe's had notice of the spill, but that is not the principal thrust of her arguments on appeal. Rather, Plaintiff focuses on arguments she made opposing summary judgment that, she claims, avert the need to establish Trader Joe's actually or constructively knew about the spilled soup before the accident occurred. She argues the floor was inherently dangerous when wet and Trader Joe's knew that this was so, such that it should have replaced its floor with slip-resistant flooring under the circumstances. She also contends Trader Joe's negligently caused the dangerous condition by handing out soup samples in lidless cups. Plaintiff further contends that the trial court abused its discretion in ruling on her evidentiary objections because it failed to state reasons for its rulings. We conclude, as the trial court did, that Trader Joe's proved the nonexistence of a triable issue of material fact. Summary judgment was proper.

## I

"[F]rom commencement to conclusion, the party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is

---

**3** At another point in its decision, the trial court recounted the statements in the Burns and Avrit declarations that the floor was slippery because it had soup on it and because the type of floor is inherently dangerous if it has a liquid on it. The court stated: "That hardly seems to be the stuff of expert opinion."

7

entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 850 (*Aguilar*).)  If the moving party satisfies its initial burden of production to make a prima facie showing that one or more elements of a cause of action cannot be established or that there is a complete defense to that cause of action, the burden shifts to the plaintiff to make a prima facie showing of the existence of a triable issue of material fact.  (Code Civ. Proc., § 437c, subd. (p)(1); *Aguilar, supra*, 25 Cal.4th at p. 850.)  A triable issue of material fact exists where "the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof."  (*Ibid*.)

We review a trial court's decision on summary judgment de novo, "considering all of the evidence the parties offered in connection with the motion (except that which the [trial] court properly excluded) and the uncontradicted inferences the evidence reasonably supports."  (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476; *Hyundai Securities Co., Ltd. v. Lee* (2015) 232 Cal.App.4th 1379, 1385.)

## II

A store owner is not the insurer of its patrons' personal safety, but does owe a duty to exercise due care in keeping its premises reasonably safe.  (*Ortega v. Kmart Corp.* (2001) 26 Cal.4th 1200, 1205 (*Ortega*).)  The elements of a negligence cause of action are the existence of a legal duty of care, breach of that duty, and proximate cause resulting in injury, i.e., damages.  (*Ladd v. County of San Mateo* (1996) 12 Cal.4th 913, 917-918.)  The elements of a cause of action for premises liability are the same as those for negligence: duty, breach, causation, and damages.  (*Ortega, supra,* 26 Cal.4th at p. 1205; see Civ. Code, § 1714, subd. (a).)  A plaintiff suing for premises liability and negligence has the burden of proving that the owner had actual or constructive knowledge of a dangerous condition in time to correct it, or that the owner was """"able by the exercise of ordinary care to discover the condition."""  (*Ortega, supra*, at p. 1206, quoting *Hatfield v. Levy Brothers* (1941) 18 Cal.2d 798, 806.)

8

## A. Trader Joe's Did Not Have Actual or Constructive Notice of the Spill

We conclude, as the trial court did, that Trader Joe's demonstrated it did not have actual notice of the spilled soup. In its summary judgment motion, Trader Joe's relied on Potthoff's testimony that he observed the condition of the floor not more than three minutes before Plaintiff fell and saw nothing on it. Trader Joe's also pointed to Plaintiff's deposition testimony that she had no idea how long the soup had been on the floor. This showing in Trader Joe's motion was sufficient to shift the burden of production to Plaintiff to make a prima facie evidentiary showing that Trader Joe's did in fact have actual notice of the spill; Trader Joe's was not required to submit a declaration from every Store employee working on the date of the incident. (See *Aguilar, supra*, 25 Cal.4th at p. 853 ["[A]ll that the defendant need do is to show that the plaintiff cannot establish at least one element of the cause of action—for example, that the plaintiff cannot prove element X. Although he remains free to do so, the defendant need not himself conclusively negate any such element—for example, himself prove not X"], italics omitted.) In opposing summary judgment, Plaintiff did not point to evidence that some other Store employee had actual notice of the spill. Rather, the only evidence Plaintiff's separate statement cited on the issue of actual notice was the testimony of Plaintiff's son that he saw footprints around the puddle of soup after his mother fell. That does not establish a dispute of fact exists as to whether Store employees had actual notice of the spill before the accident; indeed, as the trial court observed,[4] that testimony does not even establish a dispute of fact as to how long the soup was on the floor (a point also relevant to the issue of constructive notice, to which we now turn).

---

[4] The court stated: "There is simply no evidence based on Danny Rabbani's testimony that the soup was on the floor for a significant period beyond the three minutes because footprints were found 'around' the spill. If the footprints had been in the soup puddle, one legitimate inference is that they would have caused another patron to slip and fall. However, if the footprints were outside the puddle, as plaintiff's son testified, the legitimate inference is that the footprints were put there by patrons before plaintiff's fall, or after plaintiff fell. But none of these inferences, none suggests *how long* the spill had been there."

9

Where a plaintiff cannot establish actual notice of a dangerous condition, a plaintiff can establish constructive notice by circumstantial evidence. (*Ortega, supra,* 26 Cal.4th at p. 1210.) In that case, "evidence of the owner's failure to inspect the premises within a reasonable period of time is sufficient to allow an inference that the condition was on the floor long enough to give the owner the opportunity to discover and remedy it. [Citation.]" (*Id.* at p. 1203, fn. omitted.) Although a business owner's constructive knowledge of a dangerous condition may be inferred from a failure to inspect the premises within a reasonable time, speculation and conjecture are insufficient to sustain the plaintiff's burden on summary judgment. (*Id.* at pp. 1205-1206.)

Whether a dangerous condition existed long enough for a reasonably prudent person to have discovered it is ordinarily a question of fact for the jury. (*Ortega, supra*, 26 Cal.4th at p 1207.) However, if the evidence does not support a reasonable inference that the hazard existed long enough to be discovered in the exercise of reasonable care, a court may resolve the issue of notice as a matter of law. (*Ibid.*) As a result, a business owner is entitled to summary judgment if the plaintiff cannot show that the dangerous condition existed for at least a sufficient time to be discovered by ordinary care and inspection. (*Ibid.*)

Here, the undisputed evidence established that the soup was on the floor for, at most, two to three minutes before Plaintiff's fall.[5] Under the circumstances, that amount of time is insufficient to establish constructive notice. This court's decision in *Girvetz v. Boys' Market* (1949) 91 Cal.App.2d 827 (*Girvetz*), supports the conclusion.

In *Girvetz*, the plaintiff slipped on a banana or banana peel that had fallen on the floor of the defendant's grocery store. The only evidence as to how long the dangerous condition existed before the plaintiff's fall was "the testimony of a customer that she saw the banana on the floor 'a good minute and a half' before the happening of the accident." (*Girvetz, supra*, 91 Cal.App.2d at p. 828.) The court in *Girvetz* stressed that "the exact

---

**5** For the reasons already stated, the testimony from Plaintiff's son that there were footprints around the spill after the accident is insufficient to establish a dispute of fact.

10

time the condition must exist before it should, in the exercise of reasonable care, have been discovered and remedied, cannot be fixed, but varies according to the circumstances." The court held that under the circumstances, one and a half minutes was insufficient to support an inference that the defendant failed to exercise the care required of it. (*Ibid.*; compare *Louie v. Hagstrom's Food Stores* (1947) 81 Cal.App.2d 601, 607 [question of fact for jury where plaintiff slipped on a pool of syrup that had been spilled on the floor of defendant's grocery store and evidence showed no employee of defendant had examined the area for 15 to 25 minutes before the accident].)

The two to three minutes at issue in this case is not materially different from the minute and a half found insufficient to establish liability in *Girvetz*. Trader Joe's accordingly established that Plaintiff could not prove it had actual or constructive notice of the spilled soup.

**B.     Trader Joe's Established Plaintiff Could Not Prevail on Her Other Theories of Liability**

Plaintiff argues she can establish liability even without proof that Trader Joe's knew about the soup on the floor long enough to eliminate the hazardous condition. Relying on this court's decision in *Lopez* and separately urging that we adopt the "mode of operation" rule, she states that her primary argument is "not that the soup was the dangerous condition, but that the floor itself was inherently too slippery, i.e. the floor itself was the dangerous condition." (Italics and underscoring omitted.) Separately, Plaintiff argues Trader Joe's cannot claim a lack of notice because it caused the condition by negligently distributing soup samples. We are not convinced by either argument.

**1.     *Lopez* Is Inapposite and We Decline to Adopt the Mode of Operation Rule**

Plaintiff argues the circumstances in this case are indistinguishable from the facts in *Lopez,* where the court reversed a grant of summary judgment in a slip and fall suit and held that a lessor of commercial premises failed to establish it was entitled to judgment as

11

a matter of law. We disagree. Facts critical to the disposition in *Lopez* are not present here.

In *Lopez*, the defendant owned several acres of farmland and leased a portion of the land to a couple who operated a produce market. The plaintiff, Frances Lopez, regularly shopped at the market without incident, but while shopping one day she slipped on some grapes on the market floor and fell. (*Lopez, supra*, 45 Cal.App.4th at p. 711.) Lopez sued the defendant lessor for negligence and premises liability. Her complaint alleged the floors of the market were slippery and littered with produce and other materials that defendant knew or should have known constituted a dangerous condition. (*Ibid*.) The trial court granted summary judgment in favor of the defendants, rejecting Lopez's argument that the cement floor of the market was improperly constructed and finished such that it became unreasonably dangerous when it was covered with leaking water or fruit. (*Id.* at 712.)

The Court of Appeal reversed. The court held that the defendant's summary judgment motion "failed to address the theory of liability based on the claims that the floor was improperly finished and defective when littered with produce; that it was common for produce to be on the floor; that such a floor posed an unreasonable danger to customers; and the condition existed for a sufficient amount of time to be revealed by a reasonable inspection by the landlord." (*Id.* at 716.) Lopez presented evidence that would permit a factfinder to infer it was common for the floor of the market to be littered with grapes, and it was therefore clear to the Court of Appeal that Lopez was asserting liability not based on a transient condition but on one that was "allegedly recurring or continuous." (*Ibid*.) Because the defendant's separate statement of disputed facts did not address "the allegedly defective floor of the market and the issue of how rare or common an occurrence it was for grapes or produce to be on the floor," the court held the defendant failed to meet its burden on summary judgment. (*Id.* at 717.)

This case is not analogous to *Lopez*. Unlike the defendant in *Lopez,* Trader Joe's motion for summary judgment does cite evidence (the testimony of Potthoff and the non-

party witnesses) tending to show that patrons slipping on liquid on the Store floor was not a continuous or recurring condition. That is important, because the *Lopez* court did not dispense with the long-standing requirement that a premises owner must have actual or constructive notice of a dangerous condition. Rather, the court relied on the allegedly defective floor finish and the common presence of grapes on the floor to conclude that the dangerous condition was continuous and recurring such that the floor, and not the grapes upon which the plaintiff slipped, could be the basis for liability. Also unlike *Lopez*, Trader Joe's submitted evidence on the training and procedures it adopted to ensure employees regularly inspected the floor for spills—evidence that was conspicuously absent in *Lopez*. (*Lopez, supra*, 45 Cal.App.4th at p. 717 [noting that the defendant had not provided sufficient information about the nature and scope of any inspections of the premises to allow the court to determine what conduct or inspection by the defendant would have been sufficient to discharge its duty to Lopez].)

Plaintiff claims, however, that the Avrit declaration should have been sufficient to defeat summary judgment because it established a dispute of fact as to whether the dangerous condition of the wet floor was a transient or a common and recurring condition. In particular, her separate statement highlighted Avrit's opinion that the floor was quite slippery when wet and his observation that "it is foreseeable that liquids would frequently be present on the floor surface, particularly in areas adjacent to refrigeration units where the incident occurred." Plaintiff also relied on deposition testimony from the Store's "First Mate," who, she claims, "testified that he knew the free samples of soup were being spilled in the store."[6]

The Avrit declaration does not establish a dispute of fact warranting reversal for three reasons. First, the trial court sustained Trader Joe's objection to Avrit's statement that it was foreseeable liquids would be present on the floor. Because we conclude the

---

[6]     "First Mate" is the title that the Store gives to the employee assigned to oversee all aspects of the operation of the Store.

13

trial court properly sustained the objection, Plaintiff cannot rely on Avrit's statement to establish a factual dispute warranting a trial.[7] (Code Civ. Pro., § 437c, subd. (c); *Merrill v. Navegar, Inc., supra*, 26 Cal.4th at p. 476 [we consider all evidence submitted in connection with summary judgment except that which the trial court properly excluded].) Second, Avrit never claimed to have inspected the Store himself, and he stated only that it was *foreseeable* that liquids would frequently be present on the Store's floor. Even if the trial court had overruled the objections to that statement, that the frequent presence of liquids on the floor was in Avrit's view "foreseeable" does not establish a disputed issue as to whether such liquids were in fact frequently present. (Compare *Lopez, supra*, 45 Cal.App.4th at p. 711 [witness testified at deposition that he observed the market's refrigerator leaking water and saw grapes on the floor every time he went to the store].) Finally, Avrit expressly acknowledges his statement about the foreseeability of liquids being present on the floor would be true of "any retail store." It therefore proves too much; if accepted, it would effectively foreclose summary judgment not just in any case where a patron at the Store slips and falls, but in any case where a patron slips and falls at any retail store that has not either installed slip resistant flooring or applied a slip resistant treatment to its floors. California law countenances no such result. (*Ortega, supra*, 26 Cal.4th at p. 1205 [well established that a store owner is not an insurer of the safety of its patrons].)

Plaintiff fares no better in relying on the testimony of the Store's First Mate to establish a dispute of material fact. The First Mate did not testify, as Plaintiff claims, that he knew the free samples of soup were being spilled in the store. Rather, during his deposition he simply agreed that he was "aware that sometimes when you give out free

---

[7] We reject plaintiff's contention that the trial court's ruling on this objection was part of an impermissible "blanket" ruling on objections. (See *Twenty-Nine Palms Enterprises Corp. v. Bardos* (2012) 210 Cal.App.4th 1435, 1447.) The trial court referenced Avrit's statement that it was foreseeable liquids would be present on the floor, as well as other statements in the declaration, and explained that expert opinion resting solely on speculation and surmise was inadequate to survive summary judgment. Thus, at least as to this objection, the ruling was sufficient.

14

samples to anybody, that free sample may end up on the floor accidentally . . . ." That samples may sometimes end up on the floor is not evidence of a continuous or recurring condition. There is therefore no dispute of fact that suggests Plaintiff could succeed on her theory of liability premised on *Lopez* and the contention that Trader Joe's had notice that the Store's floor itself, when wet, was a dangerous condition.

In addition to relying on *Lopez*, Plaintiff urges us to adopt the "mode of operation rule" that other states follow. The mode of operation rule permits a premises owner to be held liable for a dangerous condition even without proof of actual or constructive notice of the condition—here, the spilled soup. Under the mode of operation rule, liability may attach if the dangerous condition is a reasonably foreseeable result of a business's chosen manner of operation. (See, e.g., *Jackson v. K-Mart* (Kan. 1992) 840 P.2d 463, 468.)

California has not adopted the mode of operation rule, as evidenced by this court's decision in *Moore v. Wal-Mart Stores, Inc.* (2003) 111 Cal.App.4th 472. In that case, the plaintiff slipped on a french fry sold at a McDonald's located inside one of defendant Wal-Mart's retail stores. (*Id.* at 475.) The plaintiff contended Wal-Mart had a practice of allowing customers to take food from the McDonald's into the Wal-Mart and that Wal-Mart knew that customers routinely dropped drinks and fries on its floors. In other words, Wal-Mart's "mode of operation" created the dangerous condition. (*Id.* at p. 478.) *Moore* rejected the plaintiff's argument and expressly declined to adopt the mode of operation rule. (*Id.* at 479 [mode of operation rule applied by courts in Kansas and Hawaii "is not the law in California as recently restated by the Supreme Court," citing *Ortega*].) The *Moore* opinion explains that an owner is not an insurer of a visitor's personal safety and a visitor must therefore be able to prove actual or constructive knowledge of a dangerous condition to establish liability. (*Id.* at p. 476.) "Without this knowledge requirement, certain store owners would essentially incur strict liability for slip-and-fall injuries, i.e., they would be insurers for the safety of their patrons . . . ." (*Id.*

15

at p. 479.) We follow the *Moore* decision here and decline the invitation to dispense with well-established principles requiring notice in favor of the mode of operation rule.**8**

## 2. Trader Joe's Did Not Create the Dangerous Condition

Plaintiff cites authority holding that where a store owner or its employees create a hazardous condition, the owner cannot claim it lacked notice of the condition. (*Hatfield v. Levy Brothers, supra,* 18 Cal.2d at p. 806; see also *Getchell v. Rogers Jewelry* (2012) 203 Cal.App.4th 381, 385 [where dangerous condition is created by employees of the defendant, defendant is charged with notice of the condition].)

Here, Trader Joe's motion for summary judgment contended it had no notice of the spilled soup as a matter of law. Plaintiff points to no evidence nor even an inference that suggests a Trader Joe's employee spilled the soup on the floor that caused Plaintiff's fall. Rather, Plaintiff contends the Store's practice of handing out soup samples in cups without lids and in failing to restrict the movements of customers given samples negligently caused the accident. We are not persuaded.

Just as the Wal-Mart store in *Moore* could insist on proof that it had actual or constructive notice of the french fry presumably dropped by a customer outside the area of the McDonald's in its store, the manner in which Trader Joe's distributed soup samples does not foreclose its ability to obtain summary judgment based on its lack of notice of the soup spill. In contrast to the cases on which Plaintiff relies, there are no circumstances here permitting an inference that Trader Joe's employees' distribution of soup samples breached a duty to its customers and proximately caused Plaintiff's fall.

---

**8** Plaintiff discusses the factors identified by our Supreme Court in *Rowland v. Christian* (1968) 69 Cal.2d 108 in urging us to adopt the mode of operation rule. While we decline to adopt the rule for the reasons already stated, we further observe that the *Rowland* factors would not support Plaintiff's contention that the Store must install slip resistant flooring or apply slip resistant floor treatments to avoid liability. (*Id.* at pp. 112-113 [listing factors, including the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care].)

16

(Compare *Hatfield, supra*, 18 Cal.2d at pp. 805-806 [store employee applied an excessive quantity of wax to the floor and knew it was slippery]; *Getchell v. Rogers Jewelry, supra,* 203 Cal.App.4th at p. 385 [inference that the defendant's employees caused the dangerous condition because the store break room where the accident occurred and the cleaning solution that caused the accident were under the exclusive control of the defendant and its employees]; *McKenney v. Quality Foods, Inc.* (1957) 156 Cal.App.2d 349, 353-355 [evidence permitted inference that store employees were responsible for the vegetable matter on the floor that caused the plaintiff to slip].) Moreover, as Trader Joe's argues, handing out food samples is within the norm for a grocery store and materially indistinguishable for causation purposes from various other items the store makes available for purchase by customers. As the Utah Supreme Court persuasively observed in similar circumstances (albeit circumstances involving samples of pumpkin pie, not soup), "[w]e reject the contention . . . that the giving away of samples was not an essential part of the operation of the supermarket and that such a promotional activity should itself impose a duty of extra caution." (*Long v. Smith Food King Store* (Utah 1973) 531 P.2d 360, 362.)

In sum, Trader Joe's established it had no notice of the spilled soup and that Plaintiff could not prevail on her causes of action at a trial. Summary judgment was appropriate.

## DISPOSITION

The judgment of the superior court is affirmed.  Respondent is to recover its costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


BAKER, J.


We Concur:



TURNER, P.J.



MOSK, J.